# CROWNE ATLANTIC PROPERTIES
# &
# BUSINESS BROKERS OF FLORIDA

**BBF**

### ASSET PURCHASE CONTRACT AND RECEIPT
(for the sale and purchase of business assets)

**THIS ASSET PURCHASE CONTRACT AND RECEIPT** (hereinafter, this "Contract") is entered into on November 19, 2022 by and between:

---

**BUYER:**

Legal Name of Buyer: Josh Wilson and/or assigns
[X] Individual [__] A FL Corporation [__] A FL Limited Liability Company [__] A FL Partnership [__] Other

Address of Buyer: _____

who hereby offers and agrees to purchase upon the terms and conditions hereinafter set forth, the business assets of:

---

**SELLER:**

Legal Name of Seller: Poseidon Diagnostics
[__] Individual [X] A FL Corporation [__] A FL Limited Liability Company [__] A FL Partnership [__] Other

Fictitious Name: FAST TEST NOW

Address of Business: 1500 W Cypress Creek Rd., Fort Lauderdale, Florida 33309
in Fort Lauderdale County.

---

**THE TOTAL PURCHASE PRICE FOR THE BUSINESS ASSETS SHALL BE:**

a. $ 1,900,000.00 **PAYABLE AS FOLLOWS:**

b. $ 0 By Earnest Money Deposit received herewith.

c. $ 50,000.00 By Additional Deposit upon acceptance of offer by Seller.
All Deposits to be held by: Deborah A Carman
Address: 5301 N Federal Hwy Suite 160, Boca Raton, Florida 33487
Phone: (561) 392-7031   Email: dcarman@carmanlegal.com
("Escrow Agent").
Seller and Buyer acknowledge that all checks accepted by the Escrow Agent are subject to collection. Escrowed funds shall not be disbursed until the bank has cleared them.
**The named Buyer on the contract must be the remitter of any deposit.**

d. $ 1,000,000.00 By duly executed Purchase Money Promissory Note.
The Note made in favor of, and delivered to, Seller at Closing payable in 120 equal consecutive monthly payments of $ 10,606.55, which includes interest at the rate of 5.00% per annum.
The first note payment shall be due and payable on: January 7, 2022.

e. $ 0.00 By Assumption of existing Promissory Note/Liability.
The unpaid balance of any promissory note or other deferred indebtedness to be assumed by Buyer and mentioned above is approximate. Any adjustments thereto shall be made to the cash portion provided at Closing.

f. $ 850,000.00 By In State Cashier's check or wire transfer from Purchaser on or before the Closing Date.

g. $ 0 Other Financing:

h. $ 1,900,000.00 **TOTAL PURCHASE PRICE**

---

Buyer's Initial ___JW___

Seller's Initial ___VL___
BBF70 (Revised 08/11/15)

Doc ID: 91d13f5958e9b62a...

**PRELIMINARY CONTRACT PROVISIONS**

1. **OFFER**

   This Contract shall be open for Party's written acceptance until: 5:00 o'clock o'clock P.M. on October 28, 2022.

2. **EFFECTIVE DATE:**

   The "Effective Date" of this Contract shall be the date on which the last of the parties signs and accepts the final offer thereby making the Contract bi-lateral on all items and conditions.

3. **PURCHASE OF BUSINESS ASSETS:**

   Buyer hereby offers to purchase and Seller hereby agrees to sell the Seller's business assets at the total Purchase Price.

4. **PAYMENT OF DEPOSIT:**

   [ __ ] The Buyer tenders payment of the Earnest Money Deposit with this offer, said deposit shall be made payable to the Escrow Agent.
   [X] The Buyer does NOT tender payment of the Earnest Money Deposit with this offer.

5. **CLOSING:**

   5.1  Buyer and Seller hereby mutually agree to execute any and all documents necessary to close this transaction on the Closing Date.
   5.2  The Closing Date shall be on or before December 10, 2022.
   5.3  The Closing Date may be extended in a writing signed by both Buyer and Seller.

6. **TIME:**

   **TIME IS OF THE ESSENCE** with respect to the all aspects of this Contract.

7. **AUTHORITY:**

   7.1  The Buyer and Seller have full authority to enter into this Contract and to conclude the transaction described herein.
   7.2  Neither Buyer nor Seller is a party to any agreement that shall prevent either Buyer or Seller from concluding this transaction; nor is any consent required from any third party.
   7.3  The execution, delivery and performance of this Contract shall not constitute a violation of Seller's Articles of Incorporation if a corporation or Seller's Articles of Organization if a Limited Liability Company or the entity's by-laws.

8. **SELLER'S REPRESENTATION:**

   8.1  Seller represents to Buyer that all outstanding liabilities of the Business, except as specifically set forth herein, shall be paid in full by Seller on or before the Closing, and that Buyer shall receive possession of the Assets free and clear of any encumbrances other than any security interest that may be created pursuant to this Contract.
   8.2  Seller represents to Buyer that there is no current or pending legal action, lawsuit or legal proceeding against or relating to the Business, its assets or business activity, nor does the Seller know or have reasonable grounds to know the basis of any potential legal action relative to the Business, its properties or business activity.
   8.3  Seller represents to Buyer that all of Seller's statements or representations regarding the prior operation of the Business, the value of the assets being purchased and all other material facts are true and that Seller knows said statements and representations have been relied upon by Buyer in Buyer's decision to enter into this Contract.
   8.4  Seller represents that the financial information supplied to Buyer by Seller is true and correct and is an accurate presentation of the financial condition and operating results of the Business.

9. **BUYER MAY FORM NEW ENTITY:**

    9.1  Buyer may elect to form a corporation or a Limited Liability Company after this Contract has been executed. In such event, the new entity shall become the Buyer. The original Buyer shall cause the corporation or the Limited Liability Company to ratify all of the terms and conditions of this Contract.
    9.2  Buyer shall continue to be personally liable for the performance of the terms, covenants and conditions herein.
    9.3  If the Buyer becomes an entity, the individual signatory(ies) to this Contract shall be personally liable for the performance of the terms, conditions and covenants contained herein.
    9.4  Is it the Buyer's intention to form an entity prior to closing [X] Yes / [__] No.

10. **BUYER'S DUE DILIGENCE:**

    10.1  Buyer, at Buyer's expense, shall be responsible for the initiation of any formal Due Diligence examination of the business operation generally and that that examination shall be conducted by the Buyer and/or by an appropriate professional or professionals.
    10.2  This Contract shall be contingent upon the Buyer's satisfactory Due Diligence of the company's complete operations including, but not limited to, financial records, operational procedures, condition of equipment, any and all leases, and any contractual relationships.
    10.3  Buyer shall have ten (10) calendar days to complete the said Due Diligence (the "Due Diligence Period").
    10.4  Buyer's Due Diligence Period shall commence on November 22, 2022.
    10.5  Buyer's discovery, during the Due Diligence Period, of any item or items not to the Buyer's sole, complete and personal satisfaction shall cause this Contract to be cancelled in every respect and particular.
    10.6  Buyer and Seller agree that if this Contract shall become cancelled because of the failure of Due Diligence, the Escrow Agent shall be vested with the authority to immediately refund any and all deposits held for this Contract.

11. **DEFAULT BY BUYER/SELLER:**

    11.1  DEFAULT BY BUYER:
        11.1.1  If Buyer fails to pay the balance of any cash necessary to close this transaction, or if the Buyer fails to perform any of the covenants and conditions of this Contract, the Seller shall have the right to enforce this Contract pursuant to the Contract terms.
        11.1.2  In the alternative, and at the option of the Seller, the Seller may retain all sums paid by Buyer as liquidated damages.
    11.2  DEFAULT BY SELLER:
        11.2.1  If the Seller shall default by failing to perform any of the covenants and conditions of this Contract, Buyer shall have the right to terminate this Contract, and demand the return of its escrow deposits, as well as reimbursement for any and all reasonable attorney's fees, accounting fees, and other costs incidental to Buyer's inspection of the business regardless of whether Seller or Buyer should default.
        11.2.2  If the Seller shall default by failing to perform any of the covenants and conditions of this Contract, Buyer may avail itself of any judicial remedy in law or in equity including specific performance.

## CONTRACT PURCHASE PROVISIONS

12. **BILL OF SALE:**

Seller shall deliver to Buyer at the Closing a Bill of Sale for all furniture, fixtures and equipment, whether tangible or intangible, (the "Assets") included in this sale, as per the attached Schedule "A," which, by this reference, is incorporated herein, for which Seller warrants that it has good and marketable title, free and clear of all liens and encumbrances, except any liens or encumbrances disclosed herein.

13. **CONDITION OF ASSETS:**

    13.1  All Assets included in this sale, as per attached Schedule "A," are being purchased on an "as is" basis without warranties of merchantability or fitness for any particular purpose.
    13.2  At the Closing of this sale, all equipment shall be in good working condition.
    13.3  Buyer shall be responsible for inspecting said equipment in order to determine that, as of the date of Closing, said equipment is in good working condition.

**14. SELLER FINANCING; PURCHASE MONEY PROMISSORY NOTE:**

If applicable, Buyer shall execute a Purchase Money Promissory Note (the "Note") in favor of Seller as more specifically set forth on the first page of this Contract.

**15. THIRD PARTY FINANCING; LOAN COMMITMENT:**

[X] This Contract IS NOT CONTINGENT upon any third party financing.
[__] This Contract IS CONTINGENT upon third party financing, consequently:
  15.1  Buyer shall make written application to lender within _____ (____) calendar days of the Effective Date of this Contract.
  15.2  Buyer shall have _____ (____) calendar days from the Effective Date of this Contract to receive a written loan commitment on terms acceptable to Buyer and to Buyer's sole discretion.
  15.3  Buyer shall provide written notification to Seller of Buyer's intent to close this transaction if lender's terms are acceptable to Buyer.
  15.4  Buyer may cancel this Contract by written notice to Seller and Broker within the loan commitment period; failure of Buyer to so notice the Seller and Broker shall constitute Buyer's absolute waiver of this provision.
  15.5  Buyer's cancellation of this Contract for the failure of a loan commitment shall cause this Contract to be a nullity in all respects and particulars and vest the Escrow Agent with the authority to immediately refund any and all deposits held for this Contract.

**16. SECURITY AGREEMENT**

  16.1  If Buyer executes a Note in favor of the Seller, and Buyer has assigned this Contract to its new entity, the Buyer shall make the Note in the entity's name and, along with all fiduciaries of the entity, shall personally guaranty the Note.
  16.2  The Buyer shall also execute a Security Agreement securing interest in all of its tangible and intangible Assets.
  16.3  The Security Agreement shall continue until the Note is satisfied or until the Seller regains ownership and/or control of the business.
  16.4  Buyer shall further execute a Financing Statement (UCC-l), which shall be recorded in the appropriate County and filed with the State of Florida, as per the requirements of the Florida Uniform Commercial Code.
  16.5  The collateral for the Security Agreement and Note shall be the following:
    The properties, assets and rights of the Debtor, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof (all of the same being hereinafter called the "Collateral") hereinafter described:
    1. All personal and fixture property of every kind and nature including, without limitation, all goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts, contracts and contract rights, chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities and all other investment property, supporting obligations, any other contract rights or rights to the payment of money, insurance claims and proceeds, and all general intangibles (including all payment intangibles);
    2. All trademarks (including common law), service marks and trade names, the entire goodwill of or associated with the businesses now or hereafter conducted by Debtor connected with and symbolized by any of the aforementioned properties and assets;
    3. All general intangibles and all intangible intellectual or other similar property of Debtor of any kind or nature, associated with or arising out of any of the aforementioned properties and assets and not otherwise described above; and
    4. All proceeds of any and all of the foregoing collateral and, to the extent not otherwise included, all payments under insurance (whether or not Seller is the loss payee thereof) or any indemnity, warranty or guaranty payable by reason of loss or damage to or otherwise with respect to the foregoing collateral.

**17. INVENTORY OF TRADE GOODS/CONSUMABLES:**

  17.1  It is agreed that the marketable trade goods held for resale by Seller (the "Trade Goods Inventory") shall have the approximate value of $ <u>1,000.00</u>.
  17.2  It is agreed that the consumables held for use at Seller's cost (the "Consumables") shall have the approximate value of $ <u>100,000.00</u>.
  17.3  Buyer and Seller, prior to the Closing, shall:
    17.3.1  [X] take an itemized physical inventory of the goods held for resale.
    17.3.2  [__] not take an itemized physical inventory of the goods held for resale.
  17.4  The difference between the approximate value listed above and the actual physical inventory value shall:
    17.4.1  [X] be reflected as an adjustment, more or less, to the total purchase price.
    17.4.2  [__] be reflected as an increase in the Note if the actual physical inventory is more than the values listed at 17.1 and/or 17.2 herein, or a reduction to the Purchase Price if less than the values listed at 17.1 and/or 17.2, and if less shall be reflected in the cash to close.

18  ACCOUNTS RECEIVABLE

Check which is appropriate:

18.1 [__] It is mutually agreed that Seller's accounts receivable, having the approximate value of $ _____, shall be included in the purchase price.
    18.1.1  Seller shall provide Buyer with account details including the name on the account, the account number, amount owing and aging, and this information shall be delivered to Buyer prior to Closing.
    18.1.2  The difference between the approximate value listed above and the actual value of accounts receivable at Closing shall be reflected as an adjustment to the total purchase price.
    18.1.3  $ _____ of accounts receivables transferred at Closing shall be guaranteed by Seller, and if not fully collected within _____ (_____) days of Closing, Buyer may set-off the difference against the Note, provided that Buyer shall assign Seller the right to collect said receivables.

**ALTERNATIVELY**

18.2 [X] It is mutually agreed that Seller's accounts receivable shall <u>NOT</u> be included in the purchase price.
    18.2.1  The Seller shall retain the accounts receivable of the Business.
    18.2.2  Buyer shall forward to Seller any and all accounts receivable payments received by Buyer for a period of <u>thirty (30)</u> days post Closing, and shall cooperate with Seller in providing any and all correspondence or other documents received by Buyer with respect to Seller's accounts receivable, and will otherwise cooperate with Seller in the collection of Seller's accounts receivable.

19.  **ACCOUNTS PAYABLE:**

19.1  All accounts payable accruing to the date of the Closing shall remain the responsibility of Seller and are not included in this sale.
19.2  Immediately from and after the Closing, all subsequent accounts payable shall be the sole responsibility of Buyer.

20.  **BUSINESS FICTITIOUS NAME:**

[__]  It is not the Buyer's intention to use a fictitious name.
[X]  It is the Buyer's intention to use a fictitious name. [X] Current fictitious name; [__] New Name: _____.
20.1  Seller hereby grants Buyer, effective at Closing, any and all rights held by Seller in the Fictitious name, "<u>FAST TEST NOW</u>" and any derivations thereof, and Seller hereby waives any rights thereto, and shall not, after Closing, make use of such name, directly or indirectly.

21.  **SELLER'S INDEMNIFICATION AND BUYER'S RIGHT OF SET-OFF:**

21.1  Seller indemnifies Buyer and shall hold Buyer harmless from all debts, claims, actions, losses, damages and attorney's fees, existing or that may arise from or be related to Seller's past operation and ownership of the Business, except for any liabilities specifically assumed by Buyer hereunder.
21.2  In the event Buyer should become aware of any such claim against the Business not disclosed prior to Closing, Buyer shall promptly notify Seller in writing of such claim. In the event Seller does not satisfy said claim or said claim is not disputed within ten (10) days from the receipt of such notice:
    21.2.1  In the event of an owner financed transaction, Buyer may, at its sole option, pay such claim and receive full credit against any Promissory Note payment owed to Seller under this Contract.
    21.2.2  In the event of a cash transaction, the parties agree that the Closing Attorney shall retain $ _____ from the Seller's closing proceeds for a period of _____ (_____) days after closing to secure the Seller's indemnification as provided for in this paragraph.

22.  **LOSS/DAMAGE:**

22.1  In the event there is any loss or damage to the Business premises, or any of the improvements, systems, equipment or Assets included in this sale at any time prior to the Closing, the risk of loss shall be upon Seller.
22.2  Immediately from and after the Close of this sale, all risk of loss or damage shall be upon Buyer.

**23. SELLER'S OPERATION OF THE BUSINESS PRIOR TO CLOSING:**

Seller hereby represents to Buyer that from the date of execution of this contract to the date of Closing, Seller shall carry on the business activities and operations of the Business diligently and in substantially the same manner as has been customary in the past, and shall not remove any item with the exception of product inventory sold in the normal course of business.

**24. BUSINESS DEPOSITS:**

24.1   Any and all amounts currently on deposit for the benefit of the Business for utility services, leases, insurance, etc., are and shall remain the sole property of Seller and are not included as part of this transaction.
24.2   Buyer shall, effective with the Closing, deposit such amounts as are necessary to continue the operation of the Business.

**25. BUSINESS TELEPHONE/WEBSITE/EMAIL:**

Seller agrees to transfer to Buyer at Closing, and Buyer agrees to accept all of Seller's right, title, interest and responsibility for the Business telephone number(s), and yellow pages, Website(s), and email address, or other advertising that refers to said items.

**26. BUSINESS MAIL:**

Seller agrees that all mail relating to the Business shall be routed to Buyer, and Buyer agrees to promptly forward to Seller any mail personalized to Seller.

**27. BUSINESS RECORDS:**

27.1   At the Closing, Seller shall deliver to Buyer all customer accounts and records, and any other documents pertinent to the operation of the Business that Seller may have.
27.2   Such records shall include those documents necessary to conduct business with suppliers, vendors and customers of the Business.

**28. BUSINESS PREMISES:**

Until possession is transferred to the Buyer at Closing, Seller agrees to maintain the Business premises, including heating, cooling, plumbing and electrical systems, built-in fixtures, together with all other equipment and assets included in this sale, in good working order, and to maintain and leave the premises in a clean, orderly condition.

**29. PRORATIONS:**

All pro-ratable items shall be prorated as of the Closing Date.

**30. LICENSES AND PERMITS:**

30.1   Unless otherwise specified herein, Seller agrees to cooperate with Buyer in obtaining, at Buyer's expense, any licenses, permits, approvals or certificates necessary for the continued operation of the Business.
30.2   Seller represents that to the best of Seller's knowledge the Business and premises meet, at the time of Closing, all government regulations as to health, fire, zoning and other licensing laws.
30.3   Seller shall bear the cost of repairs and/or alterations that are required to allow Buyer to operate the Business in a lawful manner.

**31. FAMILIARIZATION:**

Seller and/or OWNER agrees to spend, at no cost to Buyer, a period of [1] [__] days [X] weeks [__] month(s) during normal business hours exclusive of holidays and Sundays, from the Closing Date, to assist Buyer and employees in the orderly transfer of the Business.

**32  RESTRICTIVE COVENANT:**

Check which is appropriate:

32.1  [X] The Buyer and Seller shall enter into a written valid restraint of trade or commerce protecting the **legitimate business interests** associated with or conveyed in this transaction. The written restrictive covenant shall comport in all respects with section 542.335, Florida Statutes. The party seeking enforcement of a restrictive covenant shall state, with particularity and specificity, the legitimate business interests to be protected and the reasonable time, place and manner restrictions necessary to protect the enumerated legitimate business interests. The Parties agree that the restrictive covenant shall have a term of <u>three</u> (<u>3</u>) years and shall be enforced within the following geographic area: <u>150 miles</u>.

**ALTERNATIVELY**

32.2  [__] The Buyer and Seller shall **NOT** enter into any restraint of trade or commerce.

**33. ALLOCATION OF PURCHASE PRICE:**

33.1  Buyer and Seller acknowledge that certain Federal Income Tax laws may be applicable to this transaction.
33.2  Buyer and Seller acknowledge that each party may be required to report this transaction to the Internal Revenue Service (IRS) and allocate the Purchase Price among the applicable asset classifications found on IRS Rev. Form 8594.
33.3  Buyer and Seller agree to cooperate fully with each other to determine the appropriate asset allocation for this transaction.
33.4  Buyer and Seller agree to complete, sign and submit the appropriate IRS Rev. form 8594 for this transaction.
33.5  Buyer and Seller [X] agree to have the asset allocation completed at Closing, [__] do not agree to have the asset allocation completed at Closing.

**34.  PREMISES LEASE:**

34.1  [X] At Closing, Seller shall assign and Buyer shall assume the lease on the Business premises with Lessor's written consent, and this Contract shall be subject to such consent where consent is required.
34.2  [__] Alternately, at Buyer's option, Seller shall cooperate with the Buyer in obtaining a **new** premises lease on substantially the same terms and conditions as the Seller's existing lease, to be effective as of the Closing Date.
34.3  [__] Other:

**35.  CLOSING ATTORNEY:**

35.1  The parties hereby appoint <u>Deborah A Carman</u> at <u>5301 N Federal Hwy Suite 160, Boca Raton, Florida 33487</u>, Phone: <u>(561) 392-7031</u> Email: <u>dcarman@carmanlegal.com</u> as the Transaction Closing Attorney to receive, deposit and distribute funds for the parties and acknowledge that the Transaction Closing Attorney shall prepare and obtain execution of escrow instructions, closing documents and instruments evidencing the terms and conditions of this transaction as are required for the closing, conduct the closing, and provide for recording of the documents.
35.2  Buyer and Seller agree to execute said documents as are reasonable requested by the Closing Attorney and each party shall pay one-half (1/2) of the Closing Attorney's fees.

**36.  CLOSING COSTS/FILING AND RECORDING FEES:**

36.1  Buyer and Seller agree that each party shall pay one-half (1/2) of the Closing Costs.
36.2  If the Contract contains a Note in favor of Seller, Buyer shall pay all of the Filing/Recording fees associated with the State and County UCC filings, Documentary Stamps and any other fees associated with the Note.

**37.  PRE-CLOSING COVENANTS:**

37.1  If necessary, Buyer and Seller agree not to divulge any information about this transaction prior to Closing.
37.2  Buyer agrees not to visit business premises prior to Closing without Seller's approval.

**38. GOVERNING LAW AND FORUM SELECTION:**

38.1  CHOICE OF LAW. The laws of the State of Florida (without giving effect to its conflicts of law principles) govern all matters arising out of or relating to this Agreement, including, without limitation, its validity, interpretation, construction, performance, and enforcement.

38.2  DESIGNATION OF FORUM. Any Party bringing a legal action or proceeding against any other Party arising out of or relating to this Agreement shall bring the legal action or proceeding in the County of <u>Miami-Dade</u>, state of Florida.

**39. ATTORNEYS' FEES AND COURT COSTS**

39.1  If any legal action or other proceeding is brought for the enforcement of this Contract, or because of an alleged dispute, breach, default or misrepresentation in connection with any provision of this Contract, the successful or prevailing party or parties shall be entitled to recover reasonable attorneys' fees, court costs, and all expenses even if not taxable court costs (including, without limitation, all such fees, costs, and expenses incident to arbitration, appellate, bankruptcy, and post-judgment proceedings), incurred in that action or proceeding or any appeal, in addition to any other relief to which the party or parties may be entitled.

39.2  Attorneys' fees include legal assistant fees, expert witness fees, investigative fees, administrative costs, and all other charges billed by the attorney.

**40. WAIVER:**

No waiver of any provisions of this contract shall be effective unless it is in writing, signed by the party against whom it is asserted and any such waiver shall only be applicable to the specific instance to which it relates and shall not be deemed to be a continuing waiver.

**41. PARAGRAPH HEADLINES:**

Captions and paragraph headlines in this contract are for convenience and reference only and do not define, describe, extend or limit the scope or intent of this contract per any provision herein.

**42. SURVIVABILITY OF CONTRACT:**

The parties hereto acknowledge that this contract shall survive the Closing of this transaction as to the terms and conditions herein.

**43. BINDING EFFECT:**

43.1  This contract shall bind and inure to the benefit of the successors, assigns, personal representatives, heirs and legatees of the parties hereto.

43.2  The parties hereto acknowledge that this contract, including all covenants, representations, warranties and agreements, shall survive the Closing of this transaction.

**44. ENTIRE AGREEMENT:**

This Contract constitutes the entire agreement and understanding of the parties and cannot be modified except in writing executed by all parties. All representations made herein shall survive the closing.

**45. SEVERABILITY:**

In the event that any of the terms, conditions or covenants of this Contract are held to be unenforceable or invalid by any court of competent jurisdiction, the validity and enforceability or the remaining provisions, or portions thereof, shall not be affected but shall remain in full force and effect.

**46. CONTRACT REVIEW:**

From the date of acceptance of this Contract, Buyer and Seller shall have five (5) business days from the date of the last party to execute the Contract to have this Contract including all addenda or amendments, reviewed by their respective attorneys for the sole purpose of verifying that the form and language used herein adequately protects their clients and to make any necessary language changes within such time. The substance and material terms of this Contract shall remain unchanged.

**47. TYPEWRITTEN OR HANDWRITTEN PROVISIONS:**

Typewritten or handwritten provisions inserted in this form and acknowledged by the parties as evidenced by their initials shall control all printed provisions in conflict therewith.

**48. ENVIRONMENTAL:**

The parties acknowledge having been advised by the Broker that they are aware of the health, liability and economic impact of environmental matters relative to real estate transactions, which may include the sale of the Business or the lease of the premises where the Business is conducted. The Broker specifically affirms that it does not conduct, advise and/or have any knowledge of environmental matters, nor does it undertake or conduct analyses thereof. The parties are advised to retain qualified environmental professionals to determine if any hazardous toxic wastes, substances or other undesirable materials or conditions exist on the property and if so, whether any health danger or other liability exists and whether such substances may have been used during the construction or operation of the business or buildings, or may be present as a result of previous activities on property. Various laws and regulations have been enacted at the federal, state and local level dealing with the use, storage, handling, removal, transportation and disposal of toxic or hazardous wastes and substances. Depending upon past, current and proposed uses of this property, the parties acknowledge that it is prudent to retain an environmental expert to conduct a site investigation and/or building inspection. If hazardous or toxic substances exist or are contemplated to be used at the property, special governmental approvals or permits may be required. Further, the cost of removal and disposal of such materials may be substantial. Consequently, the assistance of legal and technical experts should be obtained where these substances are or may be present.

**49. TAX DISCLOSURE:**

Florida Statute, 212, governs the sales tax liability of parties involved in the sale or exchange of business assets. Tax on sales, use and other transactions pursuant to Chapter 212 of the Florida Statutes, and other taxes, may be due as a result of the closing of this contract. Broker discloses the existence of said statutory provision as well as the potential transferee liability purported to be created therein. However, Broker specifically disclaims any responsibility as to whether and/or to what extent said statutory provision is applicable to this transaction. Broker advises that the parties hereto seek the assistance of independent counsel. The parties acknowledge that they have been advised by the Broker to seek advice as to the allocation of the purchase price, as is required by law. Buyer and Seller acknowledge that certain Federal Income Tax and State of Florida laws and taxes may be applicable to this transaction.

**50. REAL PROPERTY; CROSS TERMINATION:**

[X] This Contract DOES NOT include real estate property.
[__] This Contract DOES include real estate property, consequently:
    50.1   The terms and conditions of the real estate sale shall be found on a separate commercial real estate contract.
    50.2   If this Contract shall terminate according to its terms, any contingent commercial real estate contract shall also terminate.

**51. BUYER'S ACKNOWLEDGMENT:**

Buyer hereby acknowledges that Buyer is relying solely on Buyer's own inspection of the Business and the representations of Seller regarding the prior Business operating history, the value of the assets being purchased and all other material facts. Broker(s) neither represented nor warranted the accuracy of any facts, figures, books, records, memoranda, financial information or data, of any kind, concerning the operations of Seller. Broker has not conducted any independent investigation whatsoever of the Business and the information provided by Seller to Broker. Moreover, Buyer acknowledges that Broker has not verified any of the representations made by Seller.

**52. SELLER'S ACKNOWLEDGMENT:**

Seller acknowledges that Broker made no representations concerning the creditworthiness, integrity or ability of Buyer to complete this transaction. Seller has relied solely on Buyer's representations with respect thereto. Seller acknowledges that the Broker has performed all its duties pursuant to the listing agreement and has earned its compensation as set forth therein.

**53. BUYER'S DEPOSIT INSTRUCTIONS TO BROKER / AGENT:**

    53.1   Buyer hereby orders Broker/Agent to accept and deliver Buyer's Deposit Check(s) to the Escrow Agent.
    53.2   Broker/Agent shall acknowledge acceptance and receipt of Buyer's deposit in a writing that shall be placed in file.
    53.3   Broker/Agent's acceptance and delivery of Buyer's Deposit Check(s), as found at Paragraph 53.1, is mutually agreeable by and between Buyer and Seller.

**54. BUSINESS BROKERS:**

| LISTING BROKER: | SELLING BROKER: |
|---|---|
| Crowne Atlantic Properties<br>Business Broker's Name | Crowne Atlantic Properties<br>Business Broker's Name |
| 620 N. WYMORE RD., SUITE 260<br>Business Broker's Street Address | 620 N. Wymore Rd., SUITE 260<br>Business Broker's Street Address |
| MAITLAND, FLORIDA 32751<br>Business Broker's City, State, Zip | Maitland, Florida 32751<br>Business Broker's City, State, Zip |
| Lee Ossin<br>Print Name of Agent | Lee Ossin<br>Print Name of Agent |
| (407) 478-4101/(407) 375-9655<br>Agent's Business Phone No./Agent's Cell Phone | (407) 478-4101/(407) 375-9655<br>Agent's Business Phone No./Agent's Cell Phone |

## ADDENDA AND/OR AMENDED TERMS

**55. OTHER:**

Disputes between Seller and Purchaser. In the event any dispute arises under this Agreement between Seller and Purchaser resulting in Broker being made a party to any action or proceeding, judicial or administrative, Seller and Purchaser, jointly and severally, agree to indemnify Broker for all reasonable attorney's fees and costs incurred as a result of Broker having been made a party to such action or proceeding provided a judgement is not rendered stating that the broker acted improperly regarding such dispute. All of the Broker's reasonable attorney's fees and costs will be shared equally between Seller and Purchaser, unless the decision of the Court or other tribunal determines that Broker was improperly or needlessly made a party solely as a result of the actions of either Seller or Purchaser, in which case such party shall immediately thereafter pay and satisfy all of Broker's reasonable attorney's fees and costs incurred.

**56. OTHER:**

Following Buyer's review and inspection of Seller's Business Records, Assets and Lease, if Buyer is not satisfied for any reason whatsoever, buyer shall have the option of canceling this Agreement by written notice to Seller and Broker made no later than the last day of the review and inspection period and thereafter, upon request, Seller agrees to execute and deliver a written statement authorizing the release of the escrow deposit(s) to Buyer. Upon Buyer's receipt of a refund of the escrow deposit, Seller, Buyer and Broker shall have no further obligation one to the other under this agreement.

**57. OTHER:**

This contract shall be contingent upon Buyer's satisfaction and acceptance with a new or assigned lease for each of the locations.

**58. OTHER:**

This contract shall be contingent upon Buyer's satisfaction of Seller's financial representations.

**THIS IS A LEGALLY BINDING AND FULLY ENFORCEABLE CONTRACT**

The Buyer and Seller acknowledge reading, understanding and receiving a true copy of this Contract. If either Party does not understand the Contract, or has any questions concerning the Contract, they should immediately consult a professional before signing. A facsimile copy of this document and any signatures thereon shall be considered as an original.

---

**BUYER'S BINDING OFFER:**

OFFERED and DATED THIS _____ day of _____ 11 / 20 / 2022 _____.

The Buyer makes the foregoing offer and agrees to purchase the above-described business assets on the terms and conditions according to the foregoing Contract. Seller acknowledges receipt of a true copy of this document.

**BUYER:**

Buyer is [X] Individual [__] A FL Corporation [__] A FL Limited Liability Company [__] A FL Partnership [__] Other

Josh Wilson and/or assigns
(Print Full Name of Buyer)                                 (Street Address of Buyer)

By: _Joshua Wilson_____
(Signature of Authorized Person) (Title) (Print Name)      (City, State, Zip of Buyer)

By: _____     (504) 621-5488/_____
(Signature of Partner if a partnership) (Print Name)       (Business Phone)     (Cell Phone)

By: _____    who personally guarantees Buyer's performance herein.
(Signature of Guarantor) (Print Name)

(Unless otherwise provided by law, an electronic signature may be used to sign as writing and shall have the same force and effect as a written signature.)

---

**SELLER'S ACCEPTANCE OF OFFER:**

ACCEPTED and DATED THIS _____ day of _____, 20 11 / 20 / 2022 at the hour of ____ : ____ o'clock ____. M.

The Seller accepts the foregoing offer and agrees to sell the business assets on the terms and conditions according to the foregoing contract. Seller acknowledges receipt of a true copy of this document.

**SELLER:**

Seller is [__] Individual [X] A FL Corporation [__] A FL Limited Liability Company [__] A FL Partnership [__] Other

Poseidon Diagnostics                                 1500 W Cypress Creek Rd.
(Print Full Name of Seller)                          (Street Address of Seller)

By: _____/V/_____     Fort Lauderdale, Florida 33309
(Signature of Authorized Person) (Title) (Print Name)    (City, State, Zip of Seller)

By: _____     (833) 830-8383/_____
(Signature of Partner if a partnership) (Print Name)    (Business Phone)     (Cell Phone)

By: _____     who personally guarantees Seller's performance herein.
(Signature of Guarantor) (Print Name)

(Unless otherwise provided by law, an electronic signature may be used to sign as writing and shall have the same force and effect as a written signature.)

---

Buyer's Initial ___ _JW_          Page 11 of 16          Seller's Initial ___

Copyright © Business Brokers of Florida          BBF70 (Revised 08/11/15)

Doc ID: 91d13f5958e9b62a

**SELLER'S REJECTION OF BUYER'S OFFER:**

REJECTED and DATED THIS _____ day of _____, 20____ at the hour of _____ : ____ o'clock ____. M.

The Seller rejects the foregoing offer on the terms and conditions set out in the contract. Seller acknowledges receipt of a true copy of this document.

**SELLER:**

<u>Poseidon Diagnostics</u>                                                                  <u>1500 W Cypress Creek Rd.</u>
(Print Full Name of Seller)                                                                  (Street Address of Seller)

By: _____                        <u>Fort Lauderdale, Florida 33309</u>
(Signature of Authorized Person) (Title) (Print Name)                     (City, State, Zip of Seller)

By: _____                        <u>(833) 830-8383</u>/_____
(Signature of Partner if a partnership) (Print Name)                        (Business Phone)           (Cell Phone)

(Unless otherwise provided by law, an electronic signature may be used to sign as writing and shall have the same force and effect as a written signature.)

Buyer's Initial _____         Page 12 of 16         Seller's Initial _____
Copyright © Business Brokers of Florida         BBF70 (Revised 08/11/15)

Doc ID: 91d13f5958e9b62a...

**SELLER'S COUNTER OFFER:**

[_] Seller counters Buyer's offer by making change notations hereon, and/or

[_] Seller counters Buyer's offer as follows, or by separate attachment (which by this reference is made a part hereof), and signs this Counter Offer contingent upon Buyer's agreement.

This Counter Offer shall be open for Buyer's acceptance until: ____ : ____ o'clock ____. M. on _____ ____, 20_____.

____. _____ :

_____

_____

_____

_____

____. _____ :

_____

_____

_____

_____

---

**SELLER'S COUNTER OFFER:**

OFFERED and DATED THIS _____ day of _____, 20_____ at the hour of ____ : ____ o'clock ____. M.

The Seller makes the foregoing Counter Offer and agrees to sell the above-described business assets on the terms and conditions according to the foregoing Contract and Counter Offer.

**SELLER:**

<u>Poseidon Diagnostics</u>                                    <u>1500 W Cypress Creek Rd.</u>
(Print Full Name of Seller)                                 (Street Address of Seller)

By: _____                       <u>Fort Lauderdale, Florida 33309</u>
(Signature of Authorized Person) (Title) (Print Name)       (City, State, Zip of Seller)

By: _____                       <u>(833) 830-8383</u>/_____
(Signature of Partner if partnership) (Print Name)          (Business Phone)          (Cell Phone)

By: _____                       who personally guarantees Seller's performance herein.
(Signature of Guarantor) (Print Name)

(Unless otherwise provided by law, an electronic signature may be used to sign as writing and shall have the same force and effect as a written signature.)

---

**BUYER'S ACCEPTANCE OF COUNTER OFFER:**

ACCEPTED and DATED THIS _____ day of _____, 20____ at the hour of ____ : ____ o'clock ____. M.

The Buyer accepts the foregoing Counter Offer and agrees to purchase the above-described business assets on the terms and conditions according to the foregoing Contract and Counter Offer. Buyer acknowledges receipt of a true copy of this document.

**BUYER:**

Buyer is [X] Individual [__] A FL Corporation [__] A FL Limited Liability Company [__] A FL Partnership [__] Other

<u>Josh Wilson and/or assigns</u>
(Print Full Name of Buyer)                                    (Street Address of Buyer)

By: _____
(Signature of Authorized Person) (Title) (Print Name)         (City, State, Zip of Buyer)

By: _____     <u>(504) 621-5488</u>/_____
(Signature of Partner if partnership) (Print Name)   (Business Phone)     (Cell Phone)

By: _____     who personally guarantees Buyer's performance herein.
(Signature of Guarantor) (Print Name)

(Unless otherwise provided by law, an electronic signature may be used to sign as writing and shall have the same force and effect as a written signature.)

**Buyer's Initial** _JW_     **Page 14 of 16**     **Seller's Initial** _TL_
Copyright © Business Brokers of Florida     BBF70 (Revised 08/11/15)

Doc ID: 91d13f5958e9b62a...

**ADDENDA AND/OR AMENDED TERMS**

FOR THE ASSET PURCHASE CONTRACT AND RECEIPT dated on or about _____, 20____ by and between:

Legal Name of Buyer: _____ and

Legal Name of Seller: _____.

____. _____:

_____
_____
_____
_____
_____

____. _____:

_____
_____
_____
_____

____. _____:

_____
_____
_____
_____
_____
_____

____. _____:

_____
_____
_____
_____

____. _____:

_____
_____
_____
_____

# SCHEDULE "A"
## LIST OF ASSETS

| [X] Attached | [_] Below | [_] None |
|---|---|---|
| _____/_____ | _____/_____ | _____/_____ |
| Seller/Buyer | Seller/Buyer | Seller/Buyer |

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Doc ID: 91d13f5958e9b62a...

# SELLER'S ASSURANCE

Pursuant to Florida Statutes §517.12(22), in connection with the sale of a privately-held company,

I, *(INSERT NAME)*_____Huascar Rijssenbeek_____,

*(INSERT POSITION)*_____ of

*(INSERT LEGAL NAME OF SELLER)*_____, a

*(INSERT TYPE OF ENTITY)*_____, organized under the laws of

*(INSERT STATE OF ORGANIZATION)*_____,

hereby represent and affirm that:

1. post-closing, any person who receives securities or assets of the acquired company, acting alone or in concert, will be a Control person (as defined in F.S. §517.12(22)(a)2, set forth below) of the acquired company or the business conducted with the assets of that company;

2. if any person is offered securities in exchange for securities or assets of the eligible privately-held company, such person, before becoming legally bound to complete the transaction, received or was given reasonable access to the most recent year-end financial statements of, and the other information about, the issuer of the securities offered in exchange as required by F.S. §517.12(22)(b)2 (set forth below); and

3. I hold the largest percentage ownership interest in the privately-held business being sold.

I affirm that the above representations are true and correct and understand that they will be relied upon by Buyer and Seller, and their respective Business Brokers, if any, for regulatory and compliance purposes in connection with the purchase and sale of the privately-held company by the parties.

_____   _____11 / 20 / 2022
Signature                                                                                Date

***Financial Information*** and other information required by F.S. §517.12(22)(b)2 means: the most recent year-end financial statements of the issuer of the securities offered in exchange, as customarily prepared by the issuer's management in the normal course of operations (if the financial statements of the issuer are audited reviewed, or compiled, the most recent year-end financial statements must include any related statement by the independent certified public accountant; a balance sheet dated not more than 120 days before the date of the exchange offer; and information pertaining to the management, business, results of operations for the period covered by the foregoing financial statements, and material loss contingencies of the issuer.

***Control person*** as defined in F.S. §517.12(22)(a)2 means: an individual or entity that possesses the power, directly or indirectly, to direct the management or policies of a company through ownership of securities, by contract, or otherwise. A person is presumed to be a **control person** of a company if he or she, with respect to that company:
   a. Is a director, a general partner, a member, or a manager of a limited liability company, or is an officer who exercises executive responsibility or has a similar status or function;
   b. Has the power to vote, sell or direct the sale of 20% or more of a class of voting securities; or
   c. In the case of a partnership or limited liability company, may receive upon dissolution, or has contributed, 20% or more of the capital.

BBF 14 (08/03/16)

Doc ID: 91d13f5958e9b62a...

# **BUYER'S ASSURANCE**

Pursuant to Florida Statutes §517.12(22), in connection with the sale of a privately-held company,

I, *(INSERT NAME)*_____,

*(INSERT POSITION)*_____ of

*(INSERT LEGAL NAME OF BUYER)*_____, a

*(INSERT TYPE OF ENTITY)*_____, organized under the laws of

*(INSERT STATE OF ORGANIZATION)* _____,

hereby represent and affirm that:

1. post-closing, any person who receives securities or assets of the acquired company, acting alone or in concert, will be a Control person (as defined in F.S. §517.12(22)(a)2, set forth below) of the acquired company or the business conducted with the assets of that company;

2. if any person is offered securities in exchange for securities or assets of the eligible privately-held company, such person, before becoming legally bound to complete the transaction, received or was given reasonable access to the most recent year-end financial statements of, and the other information about, the issuer of the securities offered in exchange as required by F.S. §517.12(22)(b)2 (set forth below); and

3. I hold the largest percentage ownership interest in the acquiring company, if there is one, or post-closing I will hold the largest percentage ownership interest in the acquired company.

I affirm that the above representations are true and correct and understand that they will be relied upon by Buyer and Seller, and their respective Business Brokers, if any, for regulatory and compliance purposes in connection with the purchase and sale of the privately-held company by the parties.

*Joshua Wilson*                                                       11 / 20 / 2022

_____          _____
Signature                                                                    Date

***Financial Information*** and other information required by F.S. §517.12(22)(b)2 means: the most recent year-end financial statements of the issuer of the securities offered in exchange, as customarily prepared by the issuer's management in the normal course of operations (if the financial statements of the issuer are audited reviewed, or compiled, the most recent year-end financial statements must include any related statement by the independent certified public accountant; a balance sheet dated not more than 120 days before the date of the exchange offer; and information pertaining to the management, business, results of operations for the period covered by the foregoing financial statements, and material loss contingencies of the issuer.

***Control person*** as defined in F.S. §517.12(22)(a)2 means: an individual or entity that possesses the power, directly or indirectly, to direct the management or policies of a company through ownership of securities, by contract, or otherwise. A person is presumed to be a **control person** of a company if he or she, with respect to that company:

   a. Is a director, a general partner, a member, or a manager of a limited liability company, or is an officer who exercises executive responsibility or has a similar status or function;
   b. Has the power to vote, sell or direct the sale of 20% or more of a class of voting securities; or
   c. In the case of a partnership or limited liability company, may receive upon dissolution, or has contributed, 20% or more of the capital.

**BBF 46 (08/03/16)**

Doc ID: 91d13f5958e9b62a

**Dropbox Sign**                                                             Audit trail

| | |
|---|---|
| Title | Purchase Contract |
| File name | josh wilson contract-bbf-400002.pdf |
| Document ID | e7217ad610bde5565829db66aa1a29ab252d612b |
| Audit trail date format | MM / DD / YYYY |
| Status | ● Signed |

## Document History

**SENT**   **11 / 20 / 2022**   Sent for signature to Josh Wilson
           09:11:23 UTC-5        (jwilson@jwpropertyserv.com) from lee@crowneatlantic.com
                                 IP: 50.197.169.57

**VIEWED** **11 / 20 / 2022**   Viewed by Josh Wilson (jwilson@jwpropertyserv.com)
           09:12:59 UTC-5        IP: 174.211.172.75

**SIGNED** **11 / 20 / 2022**   Signed by Josh Wilson (jwilson@jwpropertyserv.com)
           09:13:35 UTC-5        IP: 174.211.172.75

**COMPLETED** **11 / 20 / 2022**   The document has been completed.
              09:13:35 UTC-5

Powered by **Dropbox Sign**

Doc ID: 392b96471addb0cf87c8e5ec92f39ae0d2a289dd

**Dropbox Sign**                                                                   Audit trail

| | |
|---|---|
| Title | Purchase Contract with Josh Wilson |
| File name | purchase_contract...pertyserv.com.pdf |
| Document ID | 392b96471addb0cf87c8e5ec92f39ae0d2a289dd |
| Audit trail date format | MM / DD / YYYY |
| Status | ● Signed |

## Document History

**SENT** — **11 / 20 / 2022** 11:53:25 UTC-5
Sent for signature to Huascar Rijssenbeek (rhuascar@gmail.com) from lee@crowneatlantic.com
IP: 50.197.169.57

**VIEWED** — **11 / 20 / 2022** 14:08:52 UTC-5
Viewed by Huascar Rijssenbeek (rhuascar@gmail.com)
IP: 73.138.44.31

**SIGNED** — **11 / 20 / 2022** 14:12:48 UTC-5
Signed by Huascar Rijssenbeek (rhuascar@gmail.com)
IP: 73.138.44.31

**COMPLETED** — **11 / 20 / 2022** 14:12:48 UTC-5
The document has been completed.

Powered by **Dropbox Sign**