### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No.: 1:23cv20421

FAST TEST NOW HOLDINGS LLC,
a Florida limited liability company,
and JOSHUA WILSON, an individual,

 *Plaintiffs,*

v.

POSEIDON DIAGNOSTICS CORP,
a Florida corporation, HUASCAR
RIJSSENBEEK, an individual,
HRMGT Corp, a Florida corporation,

 *Defendants.*

_____/

### PLAINTIFFS' VERIFED AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES AND DEMAND FOR JURY TRIAL

**COMES NOW,** Plaintiffs, FAST TEST NOW HOLDINGS LLC ("**FAST TEST**") and JOSHUA WILSON ("**Mr. Wilson**) (collectively referred to as "**Plaintiffs**") by and through undersigned counsel, and pursuant to the Federal Rules of Civil Procedure and this Court's order, hereby file this Second Amended Complaint against Defendants, POSEIDON DIAGNOSTICS CORP ("**POSEIDON**"), HUASCAR RIJSSENBEEK ("**Mr. Rijssenbeek**"), HRMGT Corp ("**HRMGT**") (collectively referred to as "**Defendants**"), and in support thereof allege as follows:

1

## INTRODUCTION

1.     This is an action for damages and equitable relief. Plaintiffs suffered compensable losses when Defendants: (1) fraudulently induced Plaintiffs into purchasing the assets of a company by misrepresented material facts as to the assets of a company; and (2) breached the asset purchase agreement entered into between Plaintiffs and Defendants.

## JURISDICTION, VENUE, AND PARTIES

2.     This is an action for equitable relief and damages in excess of seventy-five thousand dollars ($75,000) exclusive of interest, costs, and fees.

3.     This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(a)(2). Complete diversity of citizenship exists between the Parties to this action.

4.     Plaintiff, FAST TEST NOW HOLDINGS LLC, is a Florida limited liability company whose sole member is a resident of Louisiana.

5.     Plaintiff, JOSHUA WILSON, is an individual residing in Louisiana and is otherwise *sui juris*.

6.     Defendant, POSEIDON DIAGNOSTICS CORP, is a Florida corporation, incorporated and conducting business in Miami-Dade County, Florida with its principal place of business located at 2064 NE 163rd street, North Miami Beach, FL 33162.

7.     Defendant, HUASCAR RIJSSENBEEK, is an individual residing in Florida and is otherwise *sui juris*.

8.     Defendant HRMGT Corp, is a Florida corporation, incorporated and conducting business in Miami-Dade County, Florida with its principal place of business located at 1515 NW 167th Street, Suite 420, Miami Gardens, FL 33169.

9.     Venue is proper pursuant to 28 U.S.C. § 1391 because all causes of action accrued in Miami-Dade County, Florida.

10.    All conditions precedent to the filing of this action have been met, waived, or excused.

11.    Plaintiff has retained the undersigned law firm and is obligated to pay reasonable attorneys' fees as compensation for the costs and services.

## GENERAL ALLEGATIONS

## THE PARTIES ENTERED INTO AN ASSET PURCHASE AGREEMENT

12.    Plaintiff, FAST TEST, was formed for the purposes of purchasing the business and all of the assets of POSEIDON.

13.    Plaintiff Mr. Wilson, is the sole member and manager of FAST TEST.

14.    Defendant, POSEIDON, was in the business of providing diagnostics test to patients.

15.    Defendant, Mr. Rijssenbeek, is the sole Shareholder and Director of Defendant POSEIDON.

16.     Rijssenbeek is the sole Shareholder and Director of Defendant HRMGT.

17.     HRMGT operated as the main business that FAST TEST purchased, however HRMGT placed all its assets into POSEIDON for this sale.

18.     On November 20, 2022, POSEIDON and Mr. Wilson entered into an asset purchase contract (the "**Agreement**") to purchase the business and all of the assets of POSEIDON for $1,900,000.00.The closing date was December 10, 2022. *See* the Agreement, attached hereto as **Exhibit "A."** *See also* the Promissory Note, attached hereto as **Exhibit "B."** *See also* the Affidavit of Assignment, attached hereto as **Exhibit "C."** *See also* the Bill of Sale, attached hereto as **Exhibit "D."**

19.     Pursuant to the Agreement, Mr. Wilson made a $50,000.00 deposit which was held in trust by Deborah A. Carman.

20.     On December 22, 2022, Mr. Wilson assigned the Agreement to FAST TEST. *See* Assignment of the Agreement attached hereto as **Exhibit "E."**

21.     Pursuant to the Agreement, POSEIDON had a ten-day due diligence period beginning on November 22, 2022, during which the Agreement could be cancelled, and all deposits returned to FAST NOW if FAST NOW was not satisfied with the due diligence findings.

22.     During the due diligence period, Defendants provided Plaintiffs with reports/data from Defendants' Google Ads Account Plaintiffs believed they were purchasing as part of the Agreement.

23.     Defendants' also provided Plaintiffs with a profit and loss statement purporting to show the profits and loss of POSEIDON from January through October 2022.

24.     The reports/date and profit and loss were alleged to contain true and accurate information about POSEIDON and POSEIDON's assets.

25.     However, on March 21, 2023, Mr. Rijssenbeek testified in his deposition that HRMGT and POSEIDON's receipts were comingled and that the two operations were allegedly combined in late 2022.

26.     Upon information and belief these reports/data derived from a Google Ads account linked or belonging to the following email: fasttestnow@gmail.com.

27.     The reports/date included: (1) Google Ads reporting for the months of January through October 2022 showing the number of clicks, impressions and amount spent in advertising each month; (2) Google Analytics for the months of January through October 2022 showing from which channel the users/customers were acquired; and (3) Stripe reports (a payment platform) for the months of January through October 2022 showing account balances for the POSEIDON.

28.     Upon a review of the Google Ads Account reports/data and the profit and loss, FAST NOW was induced into to continue going forward with the purchase of POSEIDON's assets.

29.     During the due diligence period, Plaintiffs visited and inspected the business premises.

30.     Mr. Wilson visited the North Miami location of POSEIDON with Mr. Rijssenbeek. During the visit Mr. Wilson visited two premises one which was used as a testing clinic and one which was used as a laboratory. POSIEDON and Mr. Rijssenbeek presented both premises as current and working.

31.     Mr. Wilson and FAST NOW have since learned one of North Miami Beach premise was not under lease as the lease had expired in February 2022.

32.     Further, Mr. Wilson and FAST NOW have also learned that before Mr. Rijssenbeek showed the North Miami locations to Mr. Wilson, Mr. Rijssnebeek had already informed the landlord that the lease for the testing clinic would not be renewed and the landlord had asked Mr. Rijssenbeek to remove all items, shelving and signs before vacating the premises on December 31, 2022.

33.     As such, when Mr. Rijssenbeek showed Mr. Wilson the North Miami locations, he was aware that one of the locations was no longer under lease and that the other lease would not be renewed and failed to disclose that to Mr. Wilson.

34.    By the time of closing, Plaintiffs were satisfied with their ability to obtain an assignment of the leased business premises and/or a new lease for the business premises.

35.    The representation these leases would be transferred, and that the properties were in good and working condition, induced Plaintiffs to continue going forward with the purchase of POSEIDON's assets.

36.    At closing, FAST NOW paid Defendants $850,000.00 and signed a $1,000,000.00 promissory note for POSEIDON to hold (the "**Promissory Note**"). The $50,000 deposit was released to POSEIDON. Mr. Wilson signed a personal guaranty to the Promissory Note (the "**Personal Guaranty**"). *See* **Exhibit "B."**

**DEFENDANTS REFUSED TO TRANSFER THE CROWN JEWEL ASSET**

37.    At the closing of the Agreement, Defendants signed a document stating that Mr. Rijssenbeek as director of POSEIDON certified that all "(1) representations and warranties of [POSEIDON] contained in the Agreement are true and correct in all material respects on and as of the date of Closing; and (2) [POSEIDON] has performed and complied in all material respects with each obligation required to be performed or complied with by [POSEIDON] on or before the Closing Date under the [Agreement]."

38.    POSIEDON also signed an affidavit of assignment of fictitious name, telephone number, website, domain, and advertising. Under that agreement,

**POSEIDON assigned to FAST TEST** "any website, domain any social media webpages and domains, telephone number for the business . . . and **any and all advertising**." (emphasis added). *See* **Exhibit "C."**

39.     The advertising of POSEIDON primarily comprised a Google Ads Account. The Google Ads Account is the crown jewel asset that was being transferred in the asset sale between FAST NOW and POSEIDON. Over 60% of all of the advertising of POSEIDON was conducted through this Google Ads Account. The Google Ads Account consisted of over $8,000 in daily revenue generated by POSEIDON. Plaintiffs due diligenced this and only this Google Ads Account as part of the transaction. FAST NOW expected to generate over $8,000 in revenue from the Google Ads Account after they purchased the assets of POSEIDON.

40.     This did not happen. POSEIDON refused to transfer the Google Ads Account. Instead, POSEIDON transferred to FAST NOW a brand-new, and completely separate, Google Ads Account (the "**Decoy Account**").

41.     The Decoy Account did not include any of the data or Google Ads Campaigns that were in the true Google Ads Account. This means that the Decoy Account is worthless. Defendants claimed to Plaintiffs that the Decoy Account would generate Plaintiffs the same amount of money. However, it will take 9-12 months and tens of thousands of dollars to 'machine learn' so that the Decoy Account may attain the same value as the true Google Ads Account.

42.     On or around January 10, 2023, Plaintiffs demanded that POSEIDON transfer the Google Ads Account that FAST NOW purchased.

43.     That is when Defendants informed Plaintiffs that they would not and could not transfer the true Google Ads Account that FAST NOW purchased. Defendants claimed that the Google Ads Account also contained data and campaigns from other businesses owned by Mr. Rijssenbeek. Mr. Rijssenbeek informed Plaintiffs that he refused to lose money by transferring the data and campaigns of his other businesses. Instead, he decided that Plaintiffs would be the one to lose money by not receiving the true Google Ads Account.

44.     Although FAST NOW believed it was purchasing the full Google Ads Account, FAST NOW then demanded at least the transfer of the campaigns that were specific to the POSEIDON. However, Defendants claimed that Google does not allow the transfer of individual Google Ads Campaigns. Defendants claimed that they would have to transfer the full Google Ads Account, and refused to do so.

45.     As such, on or around January 10, 2023, Plaintiffs notified Defendants of their rescission of the Agreement and all subsequent agreements, including the Promissory Note and the Personal Guaranty.

46.     Defendants claim to have then deleted the Google Ads Campaigns that were specific to POSEIDON and FAST NOW from their Google Ads Account.

47.     Defendants have since alleged that the Google Ads Account was deleted in November 2022 and is of no value, contradicting their claim that Mr. Rijssenbeek runs other businesses out of the account.

48.     If true, this allegation further exacerbates the disclosure of the Google Ad Account's records/data during the due diligence of the Agreement.

49.     To the best of Plaintiff's knowledge, information, and belief,  The Google Ads Account is likely connected to www.FastTestNow.com, and it is likely registered under the Gmail fasttestnow@gmail.com and under the names Huascar Rijssenbeek, Poseidon Diagnostics Corp., HRMGT Corp, or Fast Test Now.

50.     FAST NOW is currently losing approximately $8,000 per day due to the failure to transfer the true Google Ads Account.

51.     Plaintiffs are also losing other capital, because they are expending capital to keep the business that FAST NOW purchased afloat.

**DEFENDANTS HID OVER $50,000 IN INVOICES**

52.     Since the closing, service providers reached out to Plaintiffs requesting payment for substantial unpaid invoices. Defendants hid and omitted these unpaid invoices during the due diligence period. These unpaid invoices were not reflected in the financial statements or records of Defendants. They were not directly or indirectly disclosed to Plaintiffs. And they were not evidenced by the bank statements or any other records provided to Plaintiffs.

53.     These unpaid invoices are in the sum of over $50,000, and counting.

54.     These unpaid invoices substantially devalue the value of the assets that FAST NOW purchased. Because Plaintiffs did not have them in their possession, they were not used in the calculation of the value of the assets. If they had been used in the calculation of the value of the assets, the value would have been substantially lower.

## DEFENDANTS FAILED TO ASSIGN TWO LEASES

55.     Moreover, the Agreement was contingent on Plaintiffs' satisfaction and acceptance of either a new lease or an assignment of the leases where POSEIDON was operating.

56.     At the time of signing the Agreement, POSEIDON was operating from five different leased premises.

57.     The North Miami Beach business premise had two separate spaces, one for a lab and another for a clinic.

58.     Section 28 of the Agreement states "Until possession is transferred to the Buyer at Closing, Seller agrees to maintain the Business premises, including heating, cooling, plumbing and electrical systems, built-in fixtures, together with all other equipment and assets included in this sale, in good working order, and to maintain and leave the premises in a clean, orderly condition."

59.     After the closing of the Agreement, Plaintiffs again visited the North Miami Beach business premises and found out that at some point after the signing of the Agreement but prior to the closing date, Defendants moved out of one of the North Miami premises[1] and moved all the equipment into the other space.

60.     Under permitting rules, the clinic and lab cannot share a space. Therefore, now FAST NOW must go out and acquire another lease, to separate the two spaces.

61.     After the closing of the Agreement, Plaintiff was informed by the landlord of one of the five leased locations that the Landlord would not assign the lease over on the prior terms and conditions, and had told this to Defendants.

62.     Defendants did not disclose this information to Plaintiffs at any point during or prior to the closing of the Agreement.

## CONCLUSION

63.     Plaintiffs and Defendants entered into a purchase agreement. Plaintiffs' paid Defendants $900,000.00 and, signed a $1,000,000.00 promissory note.

64.     However, Defendants failed to transfer all the assets it was purportedly selling. Defendants did this because either because the assets did not exist, or because Defendants got rid of the assets around the time of closing.

---

[1] This is because one of the premises was not under lease, although Defendants presented the premise to Plaintiffs as if it was still under lease.

65.     Defendants also hid and failed to disclose over $50,000 in supplier invoices, which Plaintiffs are now stuck with.

66.     Defendants refused to give Plaintiffs their money back. Now, Plaintiffs are stuck with assets that do not generate even half of the money that Defendants alleged they do. Because of this, Plaintiffs are taking substantial losses in the sum of over $8,000 daily.

67.     Plaintiffs ask that this Court to either grant rescission of the Agreement and all contracts entered between Plaintiffs and Defendants in furtherance of the Agreement and damages, or otherwise grant damages to Plaintiffs.

**COUNT I**
**INJUNCTIVE RELIEF**
**(Plaintiffs Against POSEIDON)**

68.     Plaintiffs reallege and reincorporate by reference the allegations in paragraphs 1 – 67 as if fully set forth herein.

69.     FAST NOW and POSEIDON entered into a valid contract for the FAST NOW to purchase the business and assets of POSEIDON.

70.     FAST NOW and POSEIDON entered into the Agreement to purchase the business and all assets of POSEIDON, including all advertising. After closing, Defendants refused to transfer it's Google Ad Account and subsequently deleted the Google Ads Campaigns that were specific to POSEIDON and FAST NOW from their Google Ads Account, which were now property of FAST NOW.

71.     Plaintiffs have suffered damages caused by POSEIDON's breaches.

72.     Moreover, Defendants made misrepresentations and/or omissions of material fact concerning the assets FAST NOW was purchasing by: (1) providing reports/data from Defendants' Google Ads Account that Defendants did not intent to and could not transfer to FAST NOW; (2) failing to disclose Defendants' unpaid invoices; (3) failing to disclose to FAST NOW that Defendants' Google Ads Account contained several Google Ads Campaigns for several businesses; and (4) failing to disclose to FAST TEST NOW that two leases could not be transferred to FAST TEST NOW.

73.     Plaintiffs informed POSEIDON that as a result of POSEIDON's breaches and fraudulent inducement, they would not be paying the principal due under the Promissory Note.

74.     POSEIDON informed Plaintiffs that if payment of the principal amount under the Promissory Note was not made when due, POSEIDON would declare default, accelerate all payments under the Promissory Note, and seize and pursue Plaintiffs' assets as a remedy.

75.     Plaintiffs lack an adequate remedy at law, other than the issuance of a preliminary injunction enjoining POSEIDON from accelerating the Promissory Note until this Court decides whether the Agreement is valid or not.

76.     Plaintiffs will be irreparably harmed in the absence of an injunction against POSEIDON. If POSEIDON was to accelerate the payments under the Promissory Note, Plaintiffs, who are currently losing over $8,000.00 a day, would be forced to file for bankruptcy.

77.     Plaintiffs have a substantial likelihood of success on the merits at trial because the facts are uncontroverted FAST NOW and POSEIDON had a valid and enforceable contract in which POSEIDON would sell all assets including the Google Ads Account to FAST NOW. However, POSEIDON refuse to deliver the Google Ads Account to FAST NOW. Moreover, the facts also show that Defendants made material misrepresentations and omissions in order to induce Plaintiffs to enter into the Agreement.

78.     Plaintiff's requested injunction would serve the public interest because the public has an interest in the protection and enforcement of contractual rights, such as Plaintiffs'.

**WHEREFORE,** Plaintiffs pray that this Court require POSEIDON to refrain from declaring default of the Promissory Note, accelerating the Promissory Note, and seizing and pursuing Plaintiffs' assets under the Promissory Note and/or the Personal Guaranty all until this Court decides whether the Agreement is valid or not, along with any other relief this Court deems just and proper.

## COUNT II
## RESCISSION BASED ON FRAUDULENT INDUCEMENT

**(Plaintiffs Against POSEIDON)**

79.     Plaintiffs reallege and reincorporate by reference the allegations in paragraphs 1 – 67 as fully set forth herein.

80.     FAST NOW and POSEIDON entered into a contract for the FAST NOW to purchase the business and assets of POSEIDON.

81.     From November to December 2022, during the due diligence period of the Agreement, Defendants made misrepresentations and/or omissions of material fact concerning the assets FAST NOW was purchasing by:

     a.  providing reports/data from the Google Ads Account although: (1) the Google Ads Account had been deleted and therefore Defendants knew that it could not be transferred to FAST NOW; (2) POSEIDON did not intend to transfer the Google Ads Account because Mr. Rijsenbeek and HRMGT use the Google Ads Account for other businesses; or (3) Defendants knew that  Google does not allow the transfer of  individual Google Ads Campaigns;

     b.  failing to disclose to FAST NOW that: (1) the Google Ads Account was deleted; (2) the Google Ads Account contained several Google Ads Campaigns for several businesses; or (3) that the Google Ads Campaign could not be transferred individually.

     c.  failing to disclose POSEIDON's unpaid invoices;

    d.   giving Mr. Wilson a tour of the North Miami locations knowing that one of the premises was no longer under lease and that the other location's lease would not be renewed and failing to inform Mr. Wilson of such; and

    e.   failing to disclose to FAST TEST NOW that two leases could not be transferred to FAST TEST NOW.

82. Moreover, upon information and belief, given that the Google Ads Account contains campaigns and date for multiple businesses, Plaintiffs' believe that the due diligence data/reports and financials that were purported to be the data/reports and financials of POSEIDON, were actually a combination of all businesses and Defendants made it seem as it was only POSEIDON's data in order to induce Plaintiffs into signing the Agreement, the Promissory Note, the Personal Guaranty and all other agreements.

83. This belief is derived upon the fact that FAST NOW has vastly under performed in comparison to the data and financials that Defendants provided and due to the fact that Defendants refuse to allow Plaintiffs to inspect the supposedly deleted and worthless Google Ads Account.

84. Defendants knew or should have known that all the above-mentioned representations were false or that they were omitting certain material facts.

85.     Defendants intended for Plaintiffs to be induced to act upon the omissions and misrepresentations and therefore move forward with closing on the Agreement.

86.     Plaintiffs justifiably relied on the representations and omissions made by Defendants in determining whether to continue with the purchase of the assets, in going through with the closing, and in making the Promissory Note.

87.     Plaintiffs suffered damages in justifiable reliance on the omission and misrepresentation.

88.     Plaintiffs have notified POSEIDON that the Agreement and all other subsequent agreements have been rescinded and/or of their intent to rescind them.

89.     Plaintiffs have offered to and/or will restore any benefits that Plaintiffs received from Defendants, back to Defendants, if restoration is possible.

90.     Plaintiffs have no adequate remedy at law.

91.     Therefore, Plaintiffs are entitled to a declaration that the Agreement, the Promissory Note, the Personal Guaranty, and all other agreements signed as a result to the Agreement are rescinded.

**WHEREFORE,** Plaintiffs pray that this Court rescind the Agreement and all contracts entered between Plaintiffs and POSEIDON in furtherance of the Agreement, including the Promissory Note, and the Personal Guaranty, and issue judgment against POSEIDON in the amount of the value of the payments made by

Plaintiffs to POSEIDON, plus interest thereon, costs, and fees, including attorneys' fees, in favor of Plaintiffs, along with any other relief this Court deems just and proper.

## COUNT III
## RESCISSION BASED ON MUTUAL MISTAKE
### (Plaintiffs Against POSEIDON)

92.    Plaintiffs reallege and reincorporate by reference the allegations in paragraphs 1 – 67 as fully set forth herein.

93.    FAST NOW and POSEIDON entered into a valid contract for the FAST NOW to purchase the business and assets of POSEIDON.

94.    FAST NOW and POSEIDON were mistaken as to a material, substantive aspect of the Agreement.

95.    Specifically, FAST NOW believed it was purchasing all the assets of POSEIDON including POSEIDON's Google Ads Account, however, POSEIDON believed it was only selling the Google Ads Campaign specific to the business FAST NOW was purchasing, or that it was selling the Decoy Account.

96.    The mistakes were at cross-purposes.

97.    As such, the Agreement is voidable.

98.    Because the Agreement is voidable, the Promissory Note, the Personal Guaranty and all other agreements are also voidable.

99.    Plaintiffs have notified POSEIDON that the Agreement and all other subsequent agreements have been rescinded and/or of their intent to rescind them.

100.   Plaintiffs have offered to and/or will restore any benefits that Plaintiffs received from POSEIDON, back to POSEIDON, if restoration is possible.

101.   Plaintiffs have no adequate remedy at law.

102.   Therefore, Plaintiffs are entitled to a declaration that the Agreement, the Promissory Note, the Personal Guaranty, and all other agreements signed as a result to the Agreement are rescinded.

**WHEREFORE,** Plaintiffs pray that this Court rescind the Agreement and all contracts entered between Plaintiffs and POSEIDON in furtherance of the Agreement, including the Promissory Note, and the Personal Guaranty, and issue judgment against POSEIDON in the amount of the value of the payments made by Plaintiffs to POSEIDON, plus interest thereon, costs, and fees, in favor of Plaintiffs, along with any other relief this Court deems just and proper.

## COUNT IV
## BREACH OF CONTRACT
### (Plaintiffs Against POSEIDON)

103.   Plaintiffs reallege and reincorporate by reference the allegations in paragraphs 1 – 67 as if fully set forth herein.

104.   FAST NOW and POSEIDON entered into a valid contract for the FAST NOW to purchase the business and assets of POSEIDON.

20

105.   POSEIDON committed a material breach of the Agreement by failing to maintain the Business premises and all equipment and assets, in good working order, and to maintain and leave the premises in a clean, orderly condition as required by Section 28 of the Agreement.

106.   Instead, POSEDION closed the clinic space in the North Miami Beach premises and moved all equipment into the lab space, thereby failing to maintain POSEIDON's business premises.

107.   Now, to satisfy regulatory requirements, a new space must be leased, and the clinic must be moved into a new space.

108.   Moreover, Section 23 of the Agreement states "[POSEIDON] hereby represents to [Plaintiffs] that from the date of execution of this contract to the date of Closing, [POSEISON] shall carry on the business activities and operations of the Business diligently and in substantially the same manner as has been customary in the past, and shall not remove any item with the exception of product inventory sold in the normal course of business."

109.   POSEIDON failed to comply with Section 23 of the Agreement by failing to carry on the business activities and operations in substantially the same manner, specifically, Defendants stopped advertising for the business at least one month prior to the Closing of the transaction. POSEIDON also failed to comply with

Section 23 by failing to maintain all the business premises it had at the time the Agreement was signed.

110.   FAST NOW and POSEIDON entered into the Agreement to purchase the business and all assets of POSEIDON, including all advertising. After closing, POSEIDON refused to transfer it's Google Ad Account and subsequently deleted the Google Ads Campaigns that were specific to POSEIDON and FAST NOW from their Google Ads Account, which were now property of FAST NOW.

111.   Plaintiffs have suffered damages caused by POSEIDON breaches.

112.   Under Section 11.2.1 of the Agreement, if POSEIDON fail to perform any of the covenants and conditions of the Agreement, Plaintiffs are entitled to the right to terminate the Agreement and demand the return of its escrow deposits, as well as reimbursement for any and all reasonable attorney's fees, accounting fees, and other costs incidental to Plaintiff's inspection of the business.

**WHEREFORE,** Plaintiffs pray that this Court rescind the Agreement and all contracts entered between Plaintiffs and POSEIDON in furtherance of the Agreement, including the Promissory Note, and   issue judgment against POSEIDON, for the value of the payments made by Plaintiffs to POSEIDON, less any refunds, plus all damages Plaintiffs have suffered as a result of POSEIDON's breaches of the Agreement, plus interest thereon, costs, and fees, including attorneys'

fees, in favor of Plaintiffs, along with any other relief this Court deems just and proper.

## COUNT V
## FRAUDULENT INDUCEMENT
### (Plaintiffs Against Defendants)

113.    Plaintiffs reallege and reincorporate by reference the allegations in paragraphs 1 – 67 as fully set forth herein.

114.    FAST NOW and POSEIDON entered into a valid contract for the FAST NOW to purchase the business and assets of POSEIDON.

115.    From November to December 2022, during the due diligence period of the Agreement, Defendants made false misrepresentations of material fact concerning the assets FAST NOW was purchasing by providing, via email, reports/data from Defendants' Google Ads Account that Defendants did not intend to and could not transfer to FAST NOW.

116.    Specifically, Defendants made misrepresentations and/or omissions of material fact concerning the assets FAST NOW was purchasing by:

   a.  providing reports/data from the Google Ads Account although: (1) the Google Ads Account had been deleted and therefore Defendants knew that it could not be transferred to FAST NOW; (2) POSEIDON did not intend to transfer the Google Ads Account because Mr. Rijsenbeek and HRMGT use the Google Ads Account for other businesses; or (3)

Defendants knew that Google does not allow the transfer of individual Google Ads Campaigns;

b.  failing to disclose to FAST NOW that: (1) the Google Ads Account was deleted; (2) the Google Ads Account contained several Google Ads Campaigns for several businesses; or (3) that the Google Ads Campaign could not be transferred individually.

c.  failing to disclose POSEIDON's unpaid invoices;

d.  giving Mr. Wilson a tour of the North Miami locations knowing that one of the premises was no longer under lease and that the other location's lease would not be renewed and failing to inform Mr. Wilson of such; and

e.  failing to disclose to FAST TEST NOW that two leases could not be transferred to FAST TEST NOW.

117.  Moreover, upon information and belief, given that the Google Ads Account contains campaigns and date for multiple businesses, Plaintiffs' believe that the due diligence data/reports and financials that were purported to be the data/reports and financials of POSEIDON, were actually a combination of all businesses and Defendants made it seem as it was only POSEIDON's data in order to induce Plaintiffs into signing the Agreement, the Promissory Note, the Personal Guaranty and all other agreements.

118.   This belief is derived upon the fact that FAST NOW has vastly under performed in comparison to the data and financials that Defendants provided and due to the fact that Defendants refuse to allow Plaintiffs to inspect the supposedly deleted and worthless Google Ads Account.

119.   Defendants knew or should have known that all the above-mentioned representations were false or that they were omitting certain material facts.

120.   Defendants intended for Plaintiffs to be induced to act upon the omissions and misrepresentations

121.   Plaintiffs justifiably relied on the representations and omissions made by Defendants in determining whether to continue with the purchase of the assets, in going through with the closing, and in making the Promissory Note.

122.   Plaintiffs suffered damages in justifiable reliance on the omission and misrepresentation.

123.   Defendants intended for Plaintiffs to be induced to act upon the misrepresentation and omission.

124.   Plaintiffs justifiably relied on the misrepresentation and omission in determining whether to continue with the purchase of the assets, in going through with the closing, and in making the Promissory Note.

125. Plaintiffs suffered damages in justifiable reliance on the misrepresentation and omission.

**WHEREFORE,** Plaintiffs pray that this Court rescind the Agreement and all contracts entered between Plaintiffs and POSEIDON in furtherance of the Agreement, including the Promissory Note, and the Personal Guaranty, and that this Court issue judgment against Defendants in the amount of the value of the payments made by Plaintiffs to Defendant, plus all damages Plaintiffs have suffered as a result of Defendants fraudulent misrepresentations, plus interest thereon, costs, and fees, including attorneys' fees, in favor of Plaintiffs, along with any other relief this Court deems just and proper.

<u>**COUNT VI**</u>
**NEGLIGENT MISREPRESENTATION**
**(Plaintiffs Against Defendants)**

126. Plaintiffs reallege and reincorporate by reference the allegations in paragraphs 1 – 67 as fully set forth herein.

127. FAST NOW and POSEIDON entered into a valid contract for the FAST NOW to purchase the business and assets of POSEIDON.

128. From November to December 2022, during the due diligence period of the Agreement, Defendants made false misrepresentations of material fact concerning the assets FAST NOW was purchasing by providing, via email, reports/data from Defendants' Google Ads Account that Defendants did not intend to and could not transfer to FAST NOW.

129.    Specifically, Defendants made misrepresentations and/or omissions of material fact concerning the assets FAST NOW was purchasing by:

a.    providing reports/data from the Google Ads Account although: (1) the Google Ads Account had been deleted and therefore Defendants knew that it could not be transferred to FAST NOW; (2) POSEIDON did not intend to transfer the Google Ads Account because Mr. Rijsenbeek and HRMGT use the Google Ads Account for other businesses; or (3) Defendants knew that Google does not allow the transfer of individual Google Ads Campaigns;

b.    failing to disclose to FAST NOW that: (1) the Google Ads Account was deleted; (2) the Google Ads Account contained several Google Ads Campaigns for several businesses; or (3) that the Google Ads Campaign could not be transferred individually.

c.    failing to disclose POSEIDON's unpaid invoices;

d.    giving Mr. Wilson a tour of the North Miami locations knowing that one of the premises was no longer under lease and that the other location's lease would not be renewed and failing to inform Mr. Wilson of such; and

e.    failing to disclose to FAST TEST NOW that two leases could not be transferred to FAST TEST NOW.

130.   Moreover, upon information and belief, given that the Google Ads Account contains campaigns and date for multiple businesses, Plaintiffs' believe that the due diligence data/reports and financials that were purported to be the data/reports and financials of POSEIDON, were actually a combination of all businesses and Defendants made it seem as it was only POSEIDON's data in order to induce Plaintiffs into signing the Agreement, the Promissory Note, the Personal Guaranty and all other agreements.

131.   This belief is derived upon the fact that FAST NOW has vastly under performed in comparison to the data and financials that Defendants provided and due to the fact that Defendants refuse to allow Plaintiffs to inspect the supposedly deleted and worthless Google Ads Account.

132.   Defendants knew or should have known that all the above-mentioned representations were false or that they were omitting certain material facts.

133.   Defendants intended for Plaintiffs to be induced to act upon the omissions and misrepresentations

134.   Plaintiffs justifiably relied on the representations and omissions made by Defendants in determining whether to continue with the purchase of the assets, in going through with the closing, and in making the Promissory Note.

135.   Plaintiffs suffered damages in justifiable reliance on the omission and misrepresentation.

136.   Plaintiffs suffered damages in justifiable reliance on the misrepresentation and omission.

**WHEREFORE,** Plaintiffs pray that this Court rescind the Agreement and all contracts entered between Plaintiffs and POSEIDON in furtherance of the Agreement, including the Promissory Note, and that this Court issue judgment against Defendants in the amount of the value of the payments made by Plaintiffs to Defendant, plus all damages Plaintiffs have suffered as a result of Defendants negligent misrepresentations, plus interest thereon, costs, and fees, including attorneys' fees, in favor of Plaintiffs, along with any other relief this Court deems just and proper.

<u>**COUNT VII**</u>
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(FAST NOW Against POSEIDON)**

137.   Plaintiffs reallege and reincorporate by reference the allegations in paragraphs 1 – 67 as fully set forth herein.

138.   FAST NOW and POSEIDON entered into a valid contract for the FAST NOW to purchase the business and assets of POSEIDON.

139.   POSEIDON had an implied duty to perform its obligations under the contract in good faith.

140.   POSEIDON have refused to fulfill their obligations under the Agreement and has breached the express terms of the Agreement. Moreover,

POSEIDON has destroyed assets which FAST NOW purchased pursuant to the Agreement. POSEIDON did so in an effort to avoid having to transfer all assets as required by the Agreement.

141. POSEIDON's conduct in breach of the Agreement was done intentionally and with improper motive.

142. POSEIDON's breaches deprive FAST NOW of its rights under the Agreement.

143. Plaintiffs have suffered damages caused by POSEIDON breaches.

**WHEREFORE,** Plaintiffs pray that this Court rescind the Agreement and all contracts entered between Plaintiffs and POSEIDON in furtherance of the Agreement, including the Promissory Note, and that this Court issue judgment against POSEIDON, for the value of the payments made by Plaintiffs to POSEIDON, less any refunds, plus all damages Plaintiffs have suffered as a result of POSEIDON's breaches of the Covenant of Good Faith and Fair Dealing, plus interest thereon, costs, and fees, including attorneys' fees, in favor of Plaintiffs, along with any other relief this Court deems just and proper.

## COUNT VIII
## SPECIFIC PERFORMANCE – Pled in the Alternative
### (FAST NOW Against POSEIDON)

144. Plaintiffs reallege and reincorporate by reference the allegations in paragraphs 1 – 67 as fully set forth herein.

145.   FAST NOW and POSEIDON entered into a valid contract for the FAST NOW to purchase the business and all assets of POSEIDON.

146.   FAST NOW performed its obligations under the Agreement.

147.   POSEIDON has refused to perform their obligations under the Agreement, namely, Defendants have refused to transfer POSEIDON's Google Ads Account to FAST NOW.

148.   FAST NOW purchased the Google Ads Account through the Agreement.

149.   No adequate remedy at law exists as the Google Ads Account contains the specific date FAST NOW purchased.

150.   Moreover, Section 11.2.2 of the Agreement entitled FAST NOW to specific performance in the event that POSEIDON failed to perform any of the covenants and conditions of the Agreement.

**WHEREFORE**, Plaintiffs respectfully request that this Court requires that POSEIDON perform its obligations owed under the Agreement, and transfer the Google Ads Account to FAST NOW, and award Plaintiffs such other relief as this Court deems just and proper.

## <u>COUNT IX</u>
### DECLARATORY JUDGMENT RE: GOOGLE ADS ACCOUNT – Pled in the Alternative
### (Plaintiffs Against Defendants)

151.   Plaintiffs reallege and reincorporate by reference the allegations in paragraphs 1 – 67 as fully set forth herein.

152.   FAST NOW and POSEIDON entered into a valid contract for the FAST NOW to purchase the business and assets of POSEIDON.

153.   Under the Agreement, FAST NOW purchased all of the assets of POSEIDON, including all advertising.

154.   Plaintiffs' claim that POSEIDON's Google Ads Account is one of the assets FAST NOW purchased and that the language of the Agreement states so.

155.   Defendants dispute this claim. Defendants' believe that the Google Ad Account was not included in the assets that POSEIDON sold FAST NOW.

156.   Plaintiff requires input from this Court as to whether the Google Ads Account was part of the assets sold pursuant to the terms of the Agreement

157.   A bona fide, actual, present practical need for declaration exists.

158.   The declaration concerns a present, ascertained or ascertainable state of facts or present controversy as to a state of facts. Specifically, it is controverted that the FAST NOW purchased POSEIDON's Google Ads Account.

159.   Plaintiff's immunity, power, privilege or right is dependent upon the facts or the law applicable to the facts.

160.   Plaintiff has an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law.

161.   The antagonistic and adverse interests are all before the court by proper process.

162.   The relief sought is not merely the giving of legal advice or the answer of questions propounded for curiosity.

**WHEREFORE,** Plaintiffs seek from a Court a declaration that: pursuant the terms of the Agreement, FAST NOW purchased POSEIDON's Google Ad Account. Plaintiff further seeks any other relief the Court deems proper.

## VERIFICATION
## Pursuant to 28 U.S.C. 1746(2)

I verify under penalty of perjury that the foregoing is true and correct. Executed on February 1, 2023.

/s/ Joshua Wilson
Joshua Wilson individually and as Member of Fast Test Now Holdings LLC


Date: March 28, 2023                    **AINSWORTH + CLANCY, PLLC**

                                        801 Brickell Avenue, 8th Floor
                                        Miami, Florida 33131
                                        Telephone: (305) 600-3816
                                        Facsimile: (305) 600-3817
                                        *Counsel for Plaintiffs*

                                        By: /s/ Ryan Clancy
                                        Ryan Clancy, Esq.
                                        Florida Bar No.117650
                                        Email: ryan@business-esq.com
                                        Email: info@business-esq.com