**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:23-cv-20421-PCH**

FAST TEST NOW HOLDINGS, LLC,
a Florida limited liability company; and
JOSHUA WILSON, an individual,

    Plaintiffs,

vs.

POSEIDON DIAGNOSTICS CORP,
a Florida corporation;
HUASCAR RIJSSENBEEK, an individual;
and HRMGT Corp., a Florida corporation,

    Defendants.
_____/

**DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

    Defendants, Huascar Rijssenbeek ("Rijssenbeek"), Poseidon Diagnostics Corp. ("Poseidon"), and HRMGT Corp. ("HRMGT"), by and through undersigned counsel, and pursuant to Fed.R.Civ.P. 12(b)(6) and 12(f)(2), hereby file their Motion to Dismiss Second Amended Complaint, and in support thereof state:

**INTRODUCTION**

    During the March 22, 2023 status conference that addressed, *inter alia*, Defendants' Motion to Dismiss the Amended Complaint, this Court ruled that there were "substantial problems" with the Amended Complaint, and afforded Plaintiffs the opportunity to file a Second Amended Complaint to attempt to address those "substantial problems." However, the Second Amended Complaint is nearly identical to the Amended Complaint, and should therefore also be dismissed.

## ARGUMENT

    A.    **Count I for Injunctive Relief Should Be Dismissed**

        1.    **Wilson Signed an Absolute, Unconditional, Irrevocable, and Continuing Guarantee**

The Guarantee executed by Plaintiff, Joshua Wilson ("Wilson"), states that Wilson "**absolutely and unconditionally** guarantees the full, prompt, and faithful performance of FAST TEST NOW HOLDINGS, LLC ... of all covenants and obligations to be performed by FAST TEST NOW HOLDINGS, LLC, under this Note, including but not limited to, the payment of all sums required to be paid by FAST TEST NOW HOLDINGS, LLC, pursuant to this Note. This guarantee shall be **absolute, continuing and irrevocable**." **[ECF 30-2]** (emphasis added).

As the court held in *Anderson v. Trade Winds Enterprises Corp.*, 241 So.2d 174 (Fla. 4th DCA 1970),

> "The law recognize a distinction between an absolute guarantee and a conditional guarantee. One who undertakes an absolute guarantee of payment by another becomes liable immediately upon default in payment by the other. One who undertakes to conditionally guarantee another's payment does not become liable until the occurrence of the conditions ...
>
> Where the guaranty is absolute, the guarantor becomes liable upon non-payment by the principal, and the person in whose favor the guaranty runs has no duty to first pursue the principal before resorting to the guarantors." *Id.*, at 177.

Similarly, in *Corcoran v. Martin*, 202 So.2d 16 (Fla. 2nd DCA 1967), the court held, "One who guarantees payment of a promissory note is liable upon default, and the person to whom the guaranty is made is not required to first resort to the maker ... Therefore, the judgment against the maker would in no way affect the **independent liability of the guarantor**." *Id.*, at 21 (emphasis added).

Likewise, in *A & T Motors, Inc. v. Roemelmeyer*, 158 So.2d 567 (Fla. 3rd DCA 1963), the court held that "where the guaranty is an absolute one, it is no defense that the creditor has been negligent in regard to protecting and enforcing collateral security." *Id.*, at 570.

Accordingly, since Wilson signed an absolute, unconditional, irrevocable, and continuing guaranty, as distinguished from a conditional guarantee, Count I should be dismissed <u>with prejudice</u> to the extent that it is filed by Wilson.

### 2. Count I Failed to Plead Fraud With Particularity

To the extent that Count I for injunctive relief is based upon fraud, it failed to plead fraud with particularity. Pursuant to Fed.R.Civ. 9(b),"Fraud or Mistake; Conditions of Mind. In alleging **fraud** or mistake, a party must **state with particularity** the circumstances constituting fraud or mistake." (emphasis added). As the United States Court of Appeals for the Eleventh Circuit held in *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364 (11th Cir. 1997),

> "under Rule 9(b), the Plaintiffs must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud ... Plaintiffs have simply 'lumped together' all of the Defendants in their allegations of fraud ...
>
> Because fair notice is '[p]erhaps the most basic consideration' underlying Rule 9(b) ... the plaintiff who pleads fraud must 'reasonably notify the defendants of their purported role in the scheme.' ... Therefore, in a case involving multiple defendants ... 'the complaint should inform each defendant of the nature of his alleged participation in the fraud.' ... 'Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.' ... in cases involving multiple defendants 'the complaint should inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant.' ...
>
> The Amended Complaint is devoid of specific allegations with respect to the separate Defendants. Thus, the Amended Complaint is also subject to dismissal without prejudice for failure to plead fraud with the requisite specificity as to each of the Defendants under Rule 9(b). Similarly, the Amended Complaint fails to set forth the time, place, and manner in which any specific predicate act occurred." *Id.*, at 1380 - 1381 (citations omitted).

In ¶72 of Count I of the Second Amended Complaint, Plaintiffs improperly "lumped" all Defendants together, and did not specify which Defendant allegedly made each misrepresentation or omission. This failure to comply with the requirements set forth in *Brooks* is particularly significant in light of the fact that Count I seeks injunctive relief against Poseidon only, and therefore cannot be based upon the alleged misconduct of other parties.

3

In the same paragraph of the Second Amended Complaint, Plaintiffs alleged that Defendants (again improperly lumping them together) made a misrepresentation and/or omission by "(1) providing reports/data from Defendants' (again improperly lumping them together) Google Ads Account that Defendants (again improperly lumping them together) did not intent [sic] to and **could not transfer** to FAST NOW." (emphasis added). The allegation that a Google Ads Account could not be transferred is directly contradicted by the following allegations of the Second Amended Complaint:

| ¶ of Second Amended Complaint | Allegation |
|---|---|
| 17 | "HRMGT operated as the main business that FAST TEST purchased, however **HRMGT placed all its assets into POSEIDON for this sale**." (emphasis added). |
| 40 | "POSEIDON refused to transfer the Google Ads Account. Instead, POSEIDON **transferred** to FAST NOW a brand-new, and completely separate, **Google Ads Account** (the 'Decoy Account')." (emphasis added). |

It is well-settled that "When considering a motion to dismiss, the Court ... need not accept facts that are internally inconsistent." *U.S., ex rel. Carroll v. JFK Medical Center*, 2002 WL 31941007, *2 (S.D. Fla.). *See also, Howard v. Kerzner International Limited*, 2014 WL 714787, *5 (S.D. Fla.) (citation omitted) ("'courts need not accept internally inconsistent factual claims'" in evaluating a motion to dismiss).

Further, with respect to the provision of reports/data that is referenced in ¶72 of the Second Amended Complaint, in addition to the improper lumping of the Defendants together, there are no factual allegations as to (a) the specific date(s) on which the reports/data were provided; (b) how the reports/data were provided; (c) to whom the reports/data were provided; (d) where the reports/data were provided; (e) the contents of the reports/data; (f) to what specific Google Ads Account(s) the reports/data related; or (g) what statements, if any, were made by any of the Defendants regarding the significance of the reports/data, the specific date(s) on which those statements were made, how the statements were made, where the statements were made, and to whom they were made.

Moreover, ¶72 of the Second Amended Complaint failed to specifically identify the "unpaid

invoices" that Defendants (again improperly lumped together) failed to disclose.

Finally, ¶72 of the Second Amended Complaint alleged that Defendants (again improperly lumped together) committed fraud by "failing to disclose to FAST TEST NOW that two leases could not be transferred to FAST TEST NOW." However, in ¶34 of the Second Amended Complaint, Plaintiffs conceded that "By the time of closing, Plaintiffs were satisfied with their ability to obtain an assignment of the leased business premises and/or a new lease for the business premises." Therefore, the allegations of the Second Amended Complaint are internally inconsistent. *U.S., ex rel. Carroll*; *Howard*.

### 3. As a Matter of Law There is No Duty to Disclose in An Arms-Length Transaction

To the extent that Count I for injunctive relief is based upon fraud by omission, there is no duty to disclose in an arms-length transaction.

As the court held in *Watkins v. NCNB National Bank of Florida, N.A.*, 622 So.2d 1063 (Fla. 3rd DCA 1993),

> "'In an arms-length transaction, however, there is no duty imposed on either party to act for the benefit or protection of the other party, or to disclose facts that the other party could, by its own diligence have discovered' …
>
> Furthermore, in the absence of a fiduciary relationship, NCNB's nondisclosure of material facts in an arm's length transaction is not actionable misrepresentation unless NCNB employed an artifice or trick to prevent an independent investigation by Watkins." *Id.*, at 1065 (citation omitted).

The court in *Watkins* dismissed claims for fraud and negligent misrepresentation upon a motion to dismiss for the following reasons:

> "Watkins in his counterclaims and affirmative defenses fails to allege that NCNB employed any artifice or trick to prevent him from performing his own investigation. Watkins acknowledges that before requesting the loan he met with Silver Pines' general partners, visited the shopping center, and inspected the placement memorandum. Watkins also fails to plead any facts supporting an unequal opportunity to discover the information." *Id.*, at 1066.

Here, as in *Watkins*, there is no allegation in the Second Amended Complaint that Poseidon "employed an artifice or trick to prevent an independent investigation by" Plaintiffs, nor is there any allegation that Plaintiffs could not have discovered "by its own diligence" the information about

5

which they now complain. To the contrary, in ¶34 of the Second Amended Complaint, Plaintiffs conceded that "By the time of closing, Plaintiffs were satisfied with their ability to obtain an assignment of the leased business premises and/or a new lease for the business premises."

This admission is consistent with §57 of the Asset Purchase Contract that "This contract shall be contingent upon Buyer's satisfaction and acceptance with a new or assigned lease for each of the locations." Similarly, §56 of the Asset Purchase Contract stated that "Following Buyer's review and inspection of Seller's Business Records, Assets and Lease, if Buyer is not satisfied for any reason whatsoever, buyer shall have the option of canceling this Agreement." Finally, §58 of the Asset Purchase Contract stated "This contract shall be contingent upon Buyer's satisfaction of Seller's financial representations."

Since Plaintiffs had access to the leases, landlords, Google Ads information, and financial records to which their claim relates, and in fact negotiated for a contract provision that allowed Plaintiff, Fast Test Now Holdings, LLC ("Fast Test"), to cancel the contract if unsatisfied with the results of its due diligence, when combined with the lack of factual allegations referenced above (i.e. no allegations that (a) Poseidon "employed an artifice or trick to prevent an independent investigation by" Plaintiffs; or (b) Plaintiffs could not have discovered "by its own diligence" the information about which they now complain), there can be no fraud as a matter of law in this arms-length transaction.

### 4. The Claim of Fraud is Barred by the Existence and Terms of the Asset Purchase Contract

To the extent that Count I for injunctive relief is based upon fraud, it is barred by the existence and terms of the Asset Purchase Contract.

In ¶77 of Count I of the Second Amended Complaint, Plaintiffs alleged that "the facts are uncontroverted FAST NOW and POSEIDON had a valid and enforceable contract in which POSEIDON would sell all assets including the Google Ads Account to FAST NOW." The claim of fraud is barred by the independent tort doctrine.

As the court held in *Island Travel & Tours, Co. v. MYR Independent, Inc.*, 300 So.3d 1236, 1239–40 (Fla. 3rd DCA 2020),

> "It is a fundamental, long-standing common law principle that a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of

6

contract ... '[F]or an alleged misrepresentation regarding a contract to be actionable, the damages stemming from that misrepresentation must be independent, separate and distinct from the damages sustained from the contract's breach.' ...

Because MYR's tort claims are ultimately based on the same underlying conduct giving rise to its contract claim—Island's alleged failure to equally divide 'the profit and cost of Island's Operation' —we hold that MYR is, as a matter of law, unable to establish its claims for fraud in the inducement and negligent misrepresentation." *Id.*, at 1239-1240 (citations omitted).

Similarly, in *Perez v. Scottsdale Insurance Co.*, 2020 WL 607145 (S.D. Fla.), the Court held, "To bring a tort claim concurrently with a contract claim, plaintiffs must plead a tortious action committed separate and apart from the breach of contract." *Id.*, at *2.

Here, Plaintiffs' claims for fraud/negligent misrepresentation are indistinguishable in that they both (a) claim a breach of an alleged promise to transfer the "true" Google Ads Account; and (b) seek rescission and the return of the $900,000.00 paid by Fast Test to Poseidon.

In addition, as the court held in *Eclipse Medical, Inc. v. American Hydro-Surgical Instruments, Inc.*, 262 F.Supp.2d 1334 (S.D. Fla. 1999),

"fraudulent inducement claims will fail even where the subsequent contract simply says nothing about the allegedly false promise ... if the representation was not important enough to make it into the comprehensive written agreement, it must not have been material." *Id.*, at 1342-1343.

Here, the alleged misrepresentations and omissions are either (a) not contained in the Asset Purchase Contract, and therefore not actionable as fraud; or (b) contained in the Asset Purchase Contract, in which event the appropriate cause of action is breach of contract, as noted above.

### 5. An Injunction to Prevent the Acceleration of a Promissory Note is Unavailable As a Matter of Law

In Count I, Plaintiffs seek an injunction preventing Poseidon from accelerating the Promissory Note issued by Fast Test in favor of Poseidon. However, as the court held in *Sea Pines of Virginia, Inc. v. PLD, Ltd.*, 399 F.Supp. 708 (M.D. Fla. 1975),

"**The plaintiff sought a preliminary injunction to prevent the defendants from accelerating the amount due on a purchase money promissory note given by the plaintiff to the defendants** in partial payment for the purchase price of the defendants' interest in a limited partnership ...

7

it did not appear from the evidence that irreparable harm would flow from the denial of the preliminary injunction. Even if the defendants should accelerate the note in question, this Court under its general powers as a court of equity can relieve the plaintiff from the consequences of its default, if the plaintiff prevails on its claims herein. Furthermore, by reason of the Court's in personam jurisdiction over the defendants, the Court has the power to enjoin the defendants at a subsequent time, should the defendants seek to pursue collection efforts on the note by any actions outside the confines of the present lawsuit. Thus, the prerequisites for a preliminary injunction have not at this point been demonstrated by the plaintiff." *Id.*, at 710 (emphasis added).

Accordingly, Count I should be dismissed.

**B.     Count II for Rescission Based On Fraudulent Inducement Should Be Dismissed**

**1.     As a Matter of Law, a Guarantor Does Not Have Standing to Seek Rescission**

In *United Air Lines, Inc. v. ALG, Inc.*, 916 F.Supp. 793 (N.D. Ill. 1996),

"UAL agreed in 1993 to lease a 747 aircraft to ALG Trust in exchange for rental payments and various other fees. In order to persuade UAL to enter into to this lease agreement (the 'Lease'), ALG agreed to guarantee ALG Trust's obligations under the Lease." *Id.*, at 794.

Accordingly, in *United Air Lines*, UAL and ALG Trust were the parties to the contract, and ALG was the guarantor. Here, Poseidon and Fast Test are the parties to the contract, and Wilson is the guarantor.

In *United Air Lines*, "ALG argues that by supplying a defective aircraft, UAL prevented ALG Trust from succeeding in its venture and forced it to default on its payments to UAL, thereby causing the 'direct injury' to ALG of its liability under the Guarantee." *Id.*, at 796. On that basis, ALG brought a claim for rescission of the lease. *Id.*

Here, Wilson is taking the same position as ALG did, and seeking rescission of the Asset Purchase Contract on the basis that Poseidon has prevented Fast Test from succeeding in its venture and forced Fast Test to default on its payments to Poseidon, thereby causing the "direct injury" to Wilson of his liability under the guarantee.

However, the court in *United Air Lines* specifically and explicitly rejected that argument and held that ALG did not have standing to seek rescission of the loan agreement between UAL and

8

ALG Trust, as follows:

> "To be sure, if UAL actually committed the alleged breaches of the Lease, ALG was worse off than if UAL complied with the terms of the Lease. Yet this type of conduct, if true, would not cause 'direct injury' to ALG any more than it would cause 'direct injury' to any other creditor of ALG Trust. In other words, by choosing to guarantee ALG Trust's performance ALG became a contingent creditor, and if UAL prevails in this action ALG will 'succeed[ ] to [UAL's] claims against [ALG Trust]. We know that creditors cannot recover directly for injury inflicted on a firm, so guarantors as potential creditors likewise cannot recover.' ... Any claims for rescission or breach of the Lease belong to ALG Trust, not ALG. Accordingly, because ALG lacks standing to assert its claims for rescission and breach of the Lease, we grant summary judgment on the remainder of Counts I and III of ALG's counterclaim." *Id.*, at 796-797.

Here, as in *United Air Lines*, any claims for rescission or breach of the Asset Purchase Contract belong to Fast Test, not Wilson. Here, as in *United Air Lines*, subsequent to the payment of the Promissory Note by Wilson in his capacity as guarantor, Wilson can subrogate for the rights of Poseidon and bring a claim against Fast Test for repayment. *Id.; see also, Fegley v. Jennings*, 32 So. 873 (1902) ("If the guarantor in such a case desires immediate resort to the mortgage security held for such note, his remedy is to pay the note according to his contract of guaranty, and then himself enforce the mortgage security to which he would be subrogated"); *Roy v. Barnett Bank of Palm Beach County*, 455 So.2d 496, 498 (Fla. 4th DCA 1984) ("if the guaranty is to serve the purpose for which it was originally required by the creditor, then the guarantor, by subrogation to the rights of the creditor (after paying the indebtedness), should be the one to suffer the vicissitudes of an arrangement or ultimate bankruptcy rather than the creditor who exercised the foresight to require a guaranty.).

Therefore, to the extent that Count II for rescission is brought by Wilson, it should be dismissed <u>with prejudice</u>.

### 2.  Count I Failed to Plead Fraud With Particularity

Like Count I, Count II for rescission based upon fraudulent inducement improperly lumped all Defendants together in ¶81-¶86 and ¶89 thereof. *Brooks* at 1380-1381.

Further, with respect to the provision of reports/data that is referenced in ¶81(a) of the Second Amended Complaint, in addition to the improper lumping of the Defendants together, there

9

are no factual allegations as to (a) the specific date(s) on which the reports/data were provided; (b) how the reports/data were provided; (c) to whom the reports/data were provided; (d) where the reports/data were provided; (e) the contents of the reports/data; (f) to what specific Google Ads Account(s) the reports/data related; or (g) what statements, if any, were made by any of the Defendants regarding the significance of the reports/data, the specific date(s) on which those statements were made, how the statements were made, where the statements were made, and to whom they were made.

Moreover, the three components of ¶81(a) of the Second Amended Complaint are written in the disjunctive (i.e. "or" appears before component #3). Therefore, the particular basis or bases for the claim is not clear.[1]

In addition, ¶81(c) of the Second Amended Complaint failed to specifically identify the "unpaid invoices" that Defendants (again improperly lumped together) failed to disclose.

The allegations in ¶81(d)-(e) of the Second Amended Complaint regarding leases is directly contradicted by Plaintiffs' concession in ¶34 of the Second Amended Complaint that "By the time of closing, Plaintiffs were satisfied with their ability to obtain an assignment of the leased business premises and/or a new lease for the business premises." Therefore, the allegations of the Second Amended Complaint are internally inconsistent. *U.S., ex rel. Carroll*; *Howard*.

Finally, in ¶82 of the Second Amended Complaint, Plaintiffs made the following allegations:

> "Moreover, **upon information and belief**, given that the Google Ads Account contains campaigns and date [sic] for multiple businesses, Plaintiffs' [sic] believe that the due diligence data/reports and financials that were purported to be the data/reports and financials of POSEIDON, were actually a combination of all businesses and **Defendants made it seem** as it was only POSEIDON'S data in order to induce Plaintiffs into signing the Agreement, the Promissory Note, the Personal Guaranty and all other agreements." (emphasis added).

The pleading of a fraud claim "upon information and belief", which is based upon an inference set forth in ¶83 of the Second Amended Complaint, is the antithesis of the legal requirement to plead fraud with particularity, as is the allegation that Defendants (again improperly lumped together) "made it seem" a certain state of facts. Plaintiffs are required to plead precisely

---

[1] The same is true with respect to ¶81(b) of the Second Amended Complaint.

what a particular Defendant <u>actually</u> stated, rather than making the conclusory assertion that Defendants "made it seem" a certain state of facts.[2]

In *Talisman Capital Alternative Investments Fund, Ltd. v. Mouttet*, 2011 WL 13223517, *3 (S.D. Fla.), the court held,

> "Generally, a plaintiff cannot plead fraud based on 'information and belief' ... However, a court will apply a relaxed Rule 9 (b) standard in a situation where specific factual information concerning the details of the fraud are within the defendant's knowledge or control ... In such a case a plaintiff may set forth allegations based on 'information and belief', so long as the complaint cites 'specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard' ... Conclusory allegations will not pass muster; rather, a plaintiff must provide 'supporting facts' and link the fraud to the defendant." *Id.*, at *3 (citation omitted).

Here, Plaintiffs failed to satisfy these requirements.

### 3. Count II Improperly Alleged That Defendants "Should Have Known" of the Misrepresentations

As the United States Court of Appeals for the Eleventh Circuit held in *PVC Windoors, Inc. v. Babbitbay Beach Construction, N.V.*, 598 F.3d 802 (11th Cir. 2010),

> "A cause of action for fraud in the inducement contains four elements: '(1) a false statement regarding a material fact; (2) the statement maker's **knowledge that the representation is false**; (3) intent that the representation induces another's reliance; and (4) consequent injury to the party acting in reliance.'" *Id.*, at 808-809 (emphasis added) (citation omitted).

In ¶84 of the Second Amended Complaint, Plaintiffs alleged that "Defendants knew **or should have known** that all the above-mentioned representations were false or that they were omitting certain material facts." (emphasis added). However, actual knowledge and "should have known" are two entirely different states of mind, the latter of which is not an element of a claim for fraud, but is an element of a claim for negligent misrepresentation. As this Court held in *Lopez v. Rica Foods, Inc.*, 2007 WL 9701145 (S.D. Fla.), "A negligent misrepresentation claim has the same

---

[2] The requirement of a precise statement is of course in addition to the other requirements regarding date, location, etc. detailed *supra* regarding Count I for injunction, which are incorporated by reference herein.

11

elements [as fraud] except that the defendant need only have made the false statement under circumstances in which he ought to have known of the statement's falsity." *Id.*, at *7.

### 4. The Second Amended Complaint Failed to Allege Facts Demonstrating that Plaintiffs' Reliance Was Reasonable

As the United States Court of Appeals for the Eleventh Circuit held in *PVC Windoors,* "The amended complaint alleges that PVC relied on Columbia Sussex's representation, but that is not enough. **It must allege facts establishing that the reliance was reasonable**." *Id.*, at 809. Here, not only did Plaintiffs fail to allege facts establishing that their reliance was reasonable, instead only making a conclusory allegation in that regard in ¶86 of the Second Amended Complaint, but the factual allegations of the Second Amended Complaint and the Asset Purchase Contract that is Exhibit A thereto set forth in the following Table actually demonstrate that the Plaintiffs' reliance was not reasonable.

| Location in Second Amended Complaint | Demonstration of Lack of Reasonable Reliance |
|---|---|
| ¶34 | "By the time of closing, Plaintiffs were satisfied with their ability to obtain an assignment of the leased business premises and/or a new lease for the business premises." |
| §57 of Asset Purchase Contract | "This contract shall be contingent upon Buyer's satisfaction and acceptance with a new or assigned lease for each of the locations." |
| §56 of Asset Purchase Contract | "Following Buyer's review and inspection of Seller's Business Records, Assets and Lease, if Buyer is not satisfied for any reason whatsoever, buyer shall have the option of canceling this Agreement." |
| §58 of Asset Purchase Contract | "This contract shall be contingent upon Buyer's satisfaction of Seller's financial representations." |

12

### 5. As a Matter of Law There is No Duty to Disclose in An Arms-Length Transaction

As set forth in Section A(4) above regarding Count I for injunction, which is incorporated by reference herein, there is no duty to disclose in an arms-length transaction.

### 6. The Claim of Fraud is Barred by the Existence and Terms of the Asset Purchase Contract

Count II for fraud is barred by the existence and terms of the Asset Purchase Contract, for the reasons set forth in Section A regarding Count I for injunction, which are incorporated by reference herein.

### 7. There is No Allegation That the Status Quo Can Be Restored

It is axiomatic that rescission cannot be ordered when the parties cannot be restored to their status quo positions prior to the execution of the contract. As the Florida Supreme Court held in *Pryor v. Oak Ridge Development Corp.*, 119 So. 326 (1928), "It is a general rule that a contract cannot be rescinded for fraud or misrepresentation where it is not possible to put the parties back in their original position and with their original rights." *Id.*, at 329. *See also, Benn v. Key West Propane Gas Corp.*, 72 So.2d 910, 913 (Fla. 1954).

In *Big Top Koolers, Inc. v. Circus-Man Snacks, Inc.*, 2003 WL 27384341 (S.D. Fla.), the defendant filed a motion for judgment on the pleadings pursuant to Fed.R.Civ. 12(c). *Id.*, at *1. "The standard of review for a motion for judgment on the pleadings is 'almost identical to that used to decide motions to dismiss.'" *Esys Latin America, Inc. v. Intel Corp.*, 925 F.Supp.2d 1306, 1309 (S.D. Fla. 2013). In *Big Top Koolers,* the court granted the motion for judgment on the pleadings "because restoration of the status quo is impossible under the facts as alleged in the complaint." *Id.*, at *2.

Here, as in *Big Top Koolers,* the Second Amended Complaint does not contain any allegation that the parties could be restored to their status quo positions, nor does it explain how such an objective could be achieved. Rather, in ¶89 of the Second Amended Complaint, Plaintiffs merely alleged that "Plaintiffs have offered to and/or will restore any benefits that Plaintiffs received from Defendants, back to Defendants, **if restoration is possible**." That equivocal allegation falls far short of the pleading requirements set forth in *Big Top Koolers*.

13

Indeed, the allegations of the Second Amended Complaint appear to establish that the parties <u>cannot</u> be restored to their status quo positions. For example, pursuant to §32.1 of the Asset Purchase Contract, Poseidon has been bound by a three-year, 150 mile radius restrictive covenant. **[ECF 30-1].** It would be impossible to go back in time and permit Poseidon to retroactively engage in the business activity that has been prohibited by the terms of the Asset Purchase Contract.

Finally, as alleged in ¶56 of the Second Amended Complaint, "At the time of signing the Agreement, POSEIDON was operating from **<u>five</u>** different leased premises." (emphasis added). Since the Second Amended Complaint only complained of issues with respect to two leases, it appears that the other leases were transferred to Fast Test without issue. However, the Second Amended Complaint failed to allege that the landlords would accept another transfer of the leases back to Poseidon.

### C. Count III for Rescission Based On Mutual Mistake Should Be Dismissed

#### 1. As a Matter of Law, a Guarantor Does Not Have Standing to Seek Rescission

As set forth in Section B(1) above regarding Count II for rescission, which is incorporated by reference herein, Wilson does not have standing as a guarantor to seek rescission. Accordingly, to the extent that Count III for rescission is brought by Wilson, it should be dismissed <u>with prejudice</u>.

#### 2. There is No Allegation That the Status Quo Can Be Restored

Defendants incorporate by reference the argument set forth in Section B(7) above regarding the failure of the Second Amended Complaint to allege facts demonstrating that the parties could be restored to their status quo positions, or explaining how such an objective could be achieved.

### D. Count IV for Breach of Contract Should Be Dismissed

#### 1. Wilson Assigned His Contractual Rights Under the Asset Purchase Contract to Fast Test

As set forth in ¶20 of, and Exhibit E to, the Second Amended Complaint, Wilson assigned his rights under the Asset Purchase Contract to Fast Test. It was for that reason that this Court ruled during the March 22, 2023 status conference that Wilson does not have standing to bring claims for breach of the Asset Purchase Contract. Accordingly, Count IV for breach of contract, Count VII for

breach of the implied covenant of good faith and fair dealing, Count VIII for Specific Performance, and Count IX for Declaratory Judgment should be dismissed <u>with prejudice</u> to the extent that they are brought by Wilson.

### 2. The Transfer of the Google Ads Account is Not Covered by the Asset Purchase Contract

The words "Google Ads Account" do not appear anywhere in the Asset Purchase Contract. Nor does the word "Google" appear anywhere in the Asset Purchase Contract.

The assets that are covered by the Asset Purchase Contract are defined in ¶12 of the Asset Purchase Contract, as follows:

> "Seller shall deliver to Buyer at the Closing a Bill of Sale for all furniture, fixtures and equipment, whether tangible or intangible, **(the 'Assets')** included in this sale, **as per the attached Schedule 'A.'**" **[ECF 30-1]** (emphasis added).

In addition to the fact that the Google Ads Account is not "furniture, fixtures and equipment", there was no Schedule A attached to the Asset Purchase Contract. **[Id.]**.

Pursuant to ¶25 of the Asset Purchase Contract, "Seller agrees to transfer to Buyer at Closing, and Buyer agrees to accept all of Seller's right, title, interest and responsibility for the Business telephone number(s), and yellow pages, Website(s), and email address, <u>or</u> other advertising that refers to said items." **[Id.]** (emphasis added).

Even assuming *arguendo* that the term "advertising", which is not defined in the Asset Purchase Contract, includes Google Ads Accounts and all of their contents, this sentence was written in the disjunctive, rather than the conjunctive. Therefore, the Asset Purchase Contract unambiguously states that if Poseidon transferred the items that preceded the disjunctive term (i.e. telephone numbers, yellow pages, website, and e-mail address), then it did not have an obligation to transfer the items that followed the disjunctive term (i.e. Google Ads Accounts or the contents thereof). **[ECF 30-3].**

Exhibit 3 to the Second Amended Complaint, which is the Affidavit of Assignment of Fictitious Name, Telephone Number, Website, Domain and Advertising, shows that Poseidon transferred the telephone number(s), yellow pages, Website(s), and email address (i.e. telephone numbers, yellow pages, website, and e-mail address). **[ECF 30-3].** Accordingly, Count IV should

15

be dismissed <u>with prejudice</u>.[3]

### 3. The Second Amended Complaint Failed to Allege Facts That Would Constitute a Breach of ¶28 of the Asset Purchase Contract

Pursuant to ¶28 of the Asset Purchase Contract,

"Until possession is transferred to the Buyer at Closing, Seller agrees to maintain the Business premises, including heating, cooling, plumbing and electrical systems, built-in fixtures, together with all other equipment and assets included in this sale, in good working order, and to maintain and leave the premises in a clean, orderly condition."

In ¶106 of the Second Amended Complaint, Plaintiffs alleged that "POSEIDON closed the clinic space in the North Miami Beach premises and moved all equipment into the lab space, thereby failing to maintain POSEIDON's business premises." Even accepting these allegations as true for the purpose of this Motion, they do not demonstrate a breach of ¶28 of the Asset Purchase Contract. Stated differently, moving equipment around within the leased space does not mean that the equipment was not in good working order, or that the premises were not left "in a clean, orderly condition", or that the business premises were not maintained (i.e. were dirty or in a state of disrepair).[4]

### 4. There is No Allegation That the Status Quo Can Be Restored

Defendants incorporate by reference the argument set forth in Section B(7) above regarding the failure of the Second Amended Complaint to allege facts demonstrating that the parties could be restored to their status quo positions, or explaining how such an objective could be achieved.

---

[3] To the extent that Poseidon delivered assets through the closing documents that are outside the scope of the requirements of the Asset Purchase Contract (i.e. "advertising"), such delivery was gratuitous and not pursuant to a contractual obligation. *Parrish v. Gen. Motors Corp.*, 137 So.2d 255, 258 (Fla. 2nd DCA 1962) ("A bonus, under the plan described herein, partakes of gratuity while lacking essential elements of contractual obligation.).

[4] Similarly, with respect to the allegation in ¶107 of the Second Amended Complaint that "Now, to satisfy regulatory requirements, a new space must be leased, and the clinic must be moved into a new space", even accepting these allegations as true for the purpose of this Motion, they do not demonstrate a breach of ¶28 of the Asset Purchase Contract.

### E. Count V for Fraudulent Inducement Should Be Dismissed

Count V for fraudulent inducement should be dismissed for the same reasons as set forth above in Section B regarding Count II for rescission based on fraudulent inducement, including Wilson's lack of standing, which are incorporated by reference herein.

### F. Count VI for Negligent Misrepresentation Should Be Dismissed

Count VI for negligent misrepresentation should be dismissed for the same reasons as set forth above in Section B regarding Count II for rescission based on fraudulent inducement, including Wilson's lack of standing, which are incorporated by reference herein.

### G. Count VII for Breach of Implied Duty of Good Faith and Fair Dealing Should Be Dismissed With Prejudice

Count VII for breach of the implied duty of good faith and fair dealing should be dismissed for the same reasons as set forth above in Section D regarding Count IV for breach of contract, including Wilson's lack of standing, which are incorporated by reference herein.

In addition, as the court held in *Shibata v. Lim*, 133 F.Supp.2d 1311 (M.D. Fla. 2000),

> "a breach of the implied duty may be dismissed as redundant where the conduct allegedly violating the implied covenant is duplicative of the companion cause of action alleging breach of contract ... Thus, a party can maintain a claim for breach of the implied duty only if it is based on allegations different than those underlying the accompanying breach of contract claim. If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Id.*, at 1319.

Here, Count VII for breach of the implied duty of good faith and fair dealing is merely duplicative of Count IV for breach of contract. Indeed, ¶140 of the Second Amended Complaint alleged that "POSEIDON have [sic] refused to fulfill their [sic] obligations under the Agreement and has breached the express terms of the Agreement."

Finally, "the implied covenant exists so that a party cannot 'capriciously exercise discretion accorded it under a contract so as to thwart the contracting parties' reasonable expectations.'" *S. Miami Holdings, LLC v. Federal Deposit Insurance Corp.*, 2011 WL 13220688, *6 (S.D. Fla.) (citation omitted). Further, "The implied covenant of good faith and fair dealing does not, however,

'vary the express terms of a contract,' ... but, rather, 'attaches to the performance of specific contractual obligations.'" *Mount Sinai Medical Center of Greater Miami, Inc. v. Heidrick & Struggles, Inc.*, 188 F. App'x 966, 970 (11th Cir. 2006) (citations omitted). Here, there are no discretionary provisions in the Asset Purchase Contract to which the implied duty of good faith and fair dealing could attach.

Accordingly, Count VII should be dismissed with prejudice.

H.  **Count VIII for Specific Performance Should be Dismissed With Prejudice**

Count IX for specific performance of transfer of the Google Ads Account should be dismissed with prejudice for three reasons. First, as explained in Section D above, Wilson lacks standing.

Second, it is axiomatic that "Specific performance is an appropriate remedy only when there is no adequate remedy at law." *Linkous v. Linkous*, 941 So.2d 530, 530 (Fla. 1st DCA 2006). Here, Plaintiffs alleged in ¶50 of the Second Amended Complaint that "FAST NOW is currently losing approximately $8,000 per day due to the failure to transfer the true Google Ads Account." Therefore, accepting the Plaintiffs' allegation as true for the purpose of this Motion, they have an adequate remedy at law.

Third, for the reasons set forth above in Section D(2) regarding Count IV for breach of contract, which are incorporated by reference herein, the allegation in ¶148 of the Second Amended Complaint that "FAST NOW purchased the Google Ads Account through the Agreement" is demonstrably false.

I.  **Count IX for Declaratory Judgment re: Google Ads Account Should be Dismissed With Prejudice**

For the reasons set forth above in Section D(2) regarding Count IV for breach of contract, which are incorporated by reference herein, including Wilson's lack of standing, Count IX, which seeks a declaration that the Asset Purchase Contract included the Google Ads Account, should be dismissed with prejudice.

J.  **Plaintiffs Improperly Attempted to Withdraw Their Demand for Jury Trial**

While Plaintiffs did not include a demand for jury trial in their Second Amended Complaint **[ECF 30]**, they did include a demand for jury trial in their Amended Complaint. **[ECF 4].** Pursuant

to Fed.R.Civ.P. 38(d), a demand for jury trial may only be withdrawn if the parties consent. Defendants do not consent to the withdrawal of the demand for jury trial, and in fact will demand a jury trial in their Answer and Affirmative Defenses if and when this Court finds that Plaintiffs have stated a cause of action.

### K. Conclusion

WHEREFORE, for all of the foregoing reasons, Defendants, Huascar Rijssenbeek, Poseidon Diagnostics Corp., and HRMGT Corp., respectfully move the Court to dismiss the Second Amended Complaint, and in the alternative, reinstate the demand for jury trial.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via CM/ECF to RYAN M. CLANCY, ESQ., Ainsworth + Clancy, PLLC, 801 Brickell Ave., 8th Fl., Miami, FL 33131, this 11th day of April, 2023.

        KATZMAN, WASSERMAN,
        BENNARDINI & RUBINSTEIN, P.A.
        7900 Glades Road, Suite 140
        Boca Raton, Florida 33434
        Tel.: (561) 477-7774
        Fax: (561) 477-7447

        By: /s/ Craig A. Rubinstein
            CRAIG A. RUBINSTEIN
            Fla. Bar No.: 77755
            car@kwblaw.com
            mrm@kwblaw.com