UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No.: 1:23cv20421

FAST TEST NOW HOLDINGS LLC, a
Florida limited liability company, and
JOSHUA WILSON, an individual,

    *Plaintiffs,*

v.

POSEIDON DIAGNOSTICS CORP, a
Florida corporation, and HUASCAR
RIJSSENBEEK, an individual,

    *Defendants.*

_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDNATS' MEMORANDUM OF LAW

COMES NOW, Plaintiffs, FAST TEST NOW HOLDINGS LLC ("FAST NOW") and JOSHUA WILSON ("Mr. Wilson") (collectively referred to as "Plaintiffs"), by and through undersigned counsels, and pursuant to Court Order [D.E. 50], file their opposition to Defendants POSEIDON DIAGNOSTICS CORP's ("POSEIDON"), Defendant HUASCAR RIJSSENBEEK's ("Mr. Rijssenbeek"), and Defendant HRMGT CORP's ("HRMGT") (collectively referred to as "Defendants") Memorandum of Law Regarding Issue of Ambiguity in Asset Purchase Contract and Receipt [D.E. 44] (the "Memorandum of Law"), and in support thereof states as follows:

### INTRODUCTION

This Court asked the parties to draft a Memorandum of Law addressing if the Assets that FAST NOW purchased pursuant to Purchase Contract and Receipt (the "APA") included a Google Ads Account. The Memorandum of Law filed by the Defendants ignores this request and argues whether a *particular* Google Ads Account was included in the APA.

1

## **STRUCTURE AND CONTENT OF A GOOGLE ADS ACCOUNT**

Defendants dedicate a section of the Memorandum of Law as to the structure and content of a Google Ads Account. Defendants state that it is necessary to have a clear understanding of the structure and content of a Google Ads Account. However, Defendants do not explain why this understanding is necessary. It is important to note that this section in the Memorandum of Law does not address the Court's question regarding whether the APA is ambiguous as to whether a Google Ads Account was an asset under the APA. The structure and content of a Google Ads Account is not determining factor in this Court's decision as to whether a Google Ads Account was an asset to be sold under the APA.

## **ALLEGATIONS OF SECOND AMENDED COMPLAINT**

In this section of the Memorandum of Law, Defendants cite to certain allegations in the Plaintiffs' Second Amended Complaint. One thing is clear from Plaintiffs' allegations, and that is that Plaintiffs believe that the APA called for the transfer of a Google Ads Account and the POSEIDON transferred *a different* and incorrect Google Ads Account (referred to as the "Decoy Account"). Despite acknowledging that POSEIDON transferred a Google Ads Account to FAST NOW, Defendants still disingenuously argue that the terms of the APA did not call the transfer/sale of a Google Ads Account. *See* The Memorandum of Law [**D.E. 44**]; Defendants' Motion to Dismiss Second Amended Complaint [**D.E. 46**] on page 15. This begs the question – if the Agreements do not call for a Google Ads Account to be transferred (as Defendants argue) or is ambiguous as to that point- *why did the Defendants transfer any Google Ads Account whatsoever?*

Defendants in summarizing Plaintiff's allegations curiously omit that the Bill of Sale and other documents from the Closing are incorporated into the APA and survived the closing.

2

## THE ASSET PURCHASE CONTRACT IS CLEAR AND UNAMBIGUOUS
## THAT POSEIDON DID NOT HAVE ANY OBLIGATION TO TRANSFER ADVERTISING

As noted above it is critical to note here again, despite Defendants allegations that they "did not have any obligation" to transfer any Google Ads Account – they *did* transfer an Account, so that argument is disingenuous at best, waived at worst.

Under this section, Defendants state that because the words "Google Ads Account" and "Google" do not appear anywhere in the APA, it was not an intended asset. This argument has no merit as the APA does not fully name every asset that is being sold. The APA simply defines assets as "all furniture, fixtures and equipment, whether tangible or intangible." Defendants argue that a Google Ads Account is neither a furniture, fixture nor equipment. However, these terms must be given their ordinary and customary meaning. *See Am. Color Graphics, Inc. v. Eckerd Corp.*, 2008 U.S. Dist. LEXIS 56588, 15-16 (M.D. Fla. July 25, 2008). Oxford Leaners Dictionary defines the term "equipment" as "the things that are needed for a particular purpose or activity." *Equipment*, Oxfordlearnersdictionaries.com. 2023. https://www.oxfordlearnersdictionaries.com/us/definition/english/equipment#:~:text=equipment%20the%20things%20that%20are,a%20piece%20of%20equipment (19 April 2023). The words that proceed "tangible and intangible" modify the word equipment. Oxford Leaners Dictionary defines the term "intangible" as "something that does not exist as a physical thing but is still valuable to a company." *Intangible*, Oxfordlearnersdictionaries.com. 2023. https://www.oxfordlearnersdictionaries.com/us/definition/english/intangible_1?q=intangible.

It is frivolous to argue that a company, which owns and uses a Google Ads Account to operate its business, did not sell that Google Ads Account under the above definition of "assets." The Google Ads Account is clearly intangible equipment because it does not exist in the physical

3

but is still valuable to the POSEIDON and it is needed for a particular purpose or activity of POSEIDON's business.

Moreover, this Court can look at the Bill of Sale which is incorporated by reference in the APA to further determine the parties' intent when signing the APA as to what assets were being sold and purchased. The Bill of Sale expands the definition of assets by including "goodwill, inventory, customer records, materials, supplies, transferable licenses, business name(s), telephone number(s), lease, leasehold interest and improvements, <u>contract rights, software and software licenses, trade secrets, patents, intellectual property, web sites and domain names, email addresses, and all other assets of the business.</u>" <u>To the extent the Court disagrees with every "asset group" listed above surely a Google Ads Account owned by a business qualifies under the catch all – "and all other assets of the business."</u>

However, even the definition of assets in the APA is broad enough to determine that Google Ads Account is an asset intended to be sold and purchased under the APA. *See Carr v. Lammie*, 868 So. 2d 636, 639 (Fla. 2d DCA 2004) (finding that the remission proceeds were an asset to be sold in the sale of assets because the contract stated it was a sale of the assets of the business, no assets were excluded from the sale, and although the contract made no specific reference to the remission proceeds the other terms of the contract made it clear the they were an asset under the contract). Similarly, in this case, the APA does not exclude a Google Ads Account, and although it does not explicitly use the words "Google Ads Account" as an asset it lists various large asset groups of which the Google Ads account may fit in several including but not limited to "intangible equipment."

The only reasonable interpretation of the APA and the Bill of Sale (which is incorporated in the APA) leads to the undeniable conclusion that the Google Ads Account is an asset of

POSEIDON.[1]

Defendants also argue that ¶25 of the APA is a disjunctive sentence and therefore it is unambiguous that if Poseidon transferred the items that preceded the disjunctive term (i.e. telephone numbers, yellow pages, website, and e-mail address), then it did not have an obligation to transfer the items that followed the disjunctive term (i.e. Google Ads Accounts or the contents thereof). "In construing the language of a contract, courts are to be mindful that 'the goal is to arrive at a reasonable interpretation of the text of the entire agreement to accomplish its stated meaning and purpose.'" *Murley v. Wiedamann*, 25 So. 3d 27, 29 (Fla. 2d DCA 2009) (quoting *Taylor v. Taylor*, 1 So. 3d 348, 350 (Fla. 1st DCA 2009). Defendants want the Court to look at just one sentence in the whole Asset Purchase Agreement to and form a ridiculous conclusion that the "or" in the Paragraph 25 of the Asset Purchase Agreement has to be read to be everything before or the other advertising. First of all, that reading would ignore that even Defendants concede at least one Google Ads Account was part of the transfer – after all they transferred it. Secondly, Reading the Asset Purchase Agreement as a whole, it is clear that the parties intended that all assets of the business would be transferred over and that the "or" in Paragraph 25 is expanding on the prior documents, not creating a disjunctive sentence.

Finally, Defendants argue that the assets to be transferred by POSEION to FAST NOW at closing was defined by the APA and therefore to the extend that the Affidavit of Assignment of Fictitious Name, Telephone Number, Website, Domain and Advertising including "all advertising" then it was a gratuitous transfer and did not create a contractual obligation. Defendants cite to *Parrish v. Gen. Motors Corp.*, in which a court was trying to determine whether a discretionary bonus was enforceable. *See Parrish v. Gen. Motors Corp.*, 137 So.2d 255 (Fla. 2nd DCA 1962). The

---

[1] Again although Defendants try to argue otherwise to this Court, *they did* transfer a Google Ads Account to the Plaintiff and did so under the APA and its supporting documents.

court in that case decided that because the bonus was not so "contractually interwoven with the terms and conditions of the plaintiffs' employment as to confer upon him a vested right to a bonus award." *Id.* at 258. In this case, anything that POSEIDON transferred pursuant to the Affidavit of Assignment of Fictitious Name, Telephone Number, Website, Domain and Advertising was not gratuitous as it references the APA and says pursuant to the APA, POSEIDON was transferring all advertising. As Plaintiffs' have explained the Affidavit of Assignment of Fictitious Name, Telephone Number, Website, Domain and Advertising simply further shows POSEIDON's intent under the APA.

### **THE TERM "ADVERSTISING" IS AMBIGIOUS**

Finally, Defendants argue that the word "advertising" is not defined in the APA. However, when construing a contract the terms must be given their ordinary and customary meaning. *See Am. Color Graphics, Inc. v. Eckerd Corp.*, 2008 U.S. Dist. LEXIS 56588, 15-16 (M.D. Fla. July 25, 2008). Defendants argue that it is not clear whether the word advertising would include a Google Ads Account, the Google Ad Campaigns within a Google Ads Account, the machine learning within a Google Ads Account, the data within a Google Ads Account, or some combination of two or more of the above. Although that is not defined in the APA, if it is found that a Google Ads Account was an asset to be transferred, the reasonable interpretation/inference is that it includes everything associated within the Google Ads Account therefore all of the above was to be transferred.

Defendants cite to Mr. Rijssenbeek's deposition testimony in where he states how HRMGT and POSEIDON did a corporate restructure in which HRMGT transferred assets to POSEIDON. During this corporate restructure, a new Google Ads Account was created for POSEIDON and that the information from HRMGT's Google Ads Account including the machine learning was placed into the POSEIDON Google Ads Account. This new POSEIDON Google Ads Account is the account which was transferred over to FAST NOW.

Plaintiffs' contention is that the POSEIDON Google Ads Account was not the Google Ads

Account Plaintiffs purchased and that it is not the same as the HRMGT Google Ads Account because the machine learning in the POSEIDON Google Ads Account was not as advanced as the one in the HRMGT Google Ads Account. Even if an exact copy and paste replica was created, Plaintiffs argue that the HRMGT Google Ads Account is much more valuable than the POSEIDON Google Ads Account because of the machine learning process. Crucially it was the HTMGT Google Ads Account that supported all or almost all of the financial data that was the backbone of due diligence in this matter.

However, none of this is to be considered when determining whether the APA unambiguously called for the transfer of a Google Ads Account. This relates to the issue of whether POSEIDON transferred the correct Google Ads Account to FAST NOW and that is an issue that needs to be addressed after it is determined that the Google Ads Account was an asset to be transferred under the APA.

## THE APA DOES NOT COVER THE HRMGT GOOGLE ADS ACCOUNT

In this section, Defendants argue that POSEIDON does not own the HRMGT Google Ads Account and therefore it was not part of the APA. However, as stated above this is not an argument to consider in this analysis as to whether the APA unambiguously called for the transfer of a Google Ads Account. Once this is determined, Plaintiffs' will address the issue as to whether POSEIDON in fact did own the HRMGT Google Ads Account and whether by failing to transfer the HRMGT Google Ads Account, POSEIDON breached the APA. Plaintiff will also address the issue of whether Defendants' production of the HRMGT Google Ads Account data during the due diligence period of the APA and later transferred the new POSEIDON Google Ads Account constituted fraud in the inducement. However, as Defendants have stated these are issues to be resolved addressed later in the case and are not to be considered in this analysis.

In this section however, Defendants admit that in fact a Google Ads Account was transferred to FAST NOW which again shows how disingenuous their argument that a Google Ads Account was not an asset to be transferred under the APA really is.

The issue in this briefing is not whether a *specific* Google Ads Account was to be transferred under the APA, rather it is whether a Google Ads Account was an asset to be transferred under the APA, that is more than clear. However, once this issue is decided, this dispute boils down to whether the correct Google Ads Account was transferred and if the transaction was induced by fraud.[2]

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court find that the APA is unambiguous and that based on the terms of the APA a Google Ads Account was included under the assets being sold under the APA.

Dated: April 20, 2023.

Respectfully Submitted,

**AINSWORTH + CLANCY, PLLC**

By: /s/ Ryan Clancy
Ryan M. Clancy, Esq.
Fla. Bar No. 117650
801 Brickell Ave., 8th floor
Miami, Florida 33131
Email: ryan@business-esq.com
Phone: 305-600-3816
Fax: 305-600-3817
*Attorney for Plaintiffs*

---

[2] Plus all other claims being brought by Plaintiffs.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed on April 20, 2023, and served on all parties of record via the EF/CMR system.

By: /s/ Ryan Clancy<br>Ryan Clancy, Esq.

**Service List:**

KATZMAN, WASSERMAN,
BENNARDINI & RUBENSTEIN, P.A.
Craig A. Rubenstein, Esq.
Florida Bar No. 77755
7900 Glades Road, Suite 140
Boca Raton, Florida 33434
Telephone: 561-477-7774
car@kwblaw.com