UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:23-cv-20421-PCH

FAST TEST NOW HOLDINGS, LLC,
a Florida limited liability company; and
JOSHUA WILSON, an individual,

  Plaintiffs,

vs.

POSEIDON DIAGNOSTICS CORP,
a Florida corporation;
HUASCAR RIJSSENBEEK, an individual;
and HRMGT Corp., a Florida corporation,

  Defendants.
_____/

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MEMORANDUM OF LAW
REGARDING AMBIGUITY OF ASSET PURCHASE CONTRACT AND RECEIPT**

  Defendants, Huascar Rijssenbeek, Poseidon Diagnostics Corp. ("Poseidon"), and HRMGT Corp. ("HRMGT"), by and through undersigned counsel, and pursuant to this Court's Order Requiring Response **[ECF 50]**, hereby file their Response to Plaintiffs' Memorandum of Law Regarding Ambiguity of Asset Purchase Contract and Receipt **[ECF 45]**, as follows:

  1. Plaintiffs' Memorandum is more notable for the issues that it does <u>not</u> address than it is for those that it does address.

  2. There are six key issues that Plaintiffs' Memorandum does not address.

  3. **First**, Plaintiffs' Memorandum ignores the fact that neither the words "Google" nor "Google Ads Account" appear anywhere in the APA.

4.     **Second**, Plaintiffs' Memorandum ignores the facts that (a) ¶25 of the APA, which states, "Seller agrees to transfer to Buyer at Closing, and Buyer agrees to accept all of Seller's right, title, interest and responsibility for the Business telephone number(s), and yellow pages, Website(s), and email address, **or** other advertising that refers to said items", is written in the disjunctive; and (b) even assuming *arguendo* that the term "advertising", which is not defined in the APA, includes Google Ads Accounts and all of their contents, the APA is unambiguous that if Poseidon transferred the items that preceded the disjunctive term (i.e. telephone numbers, yellow pages, website, and e-mail address), then it did not have an obligation to transfer the items that followed the disjunctive term (i.e. Google Ads Accounts or the contents thereof).

5.     **Third**, the fact that the assets required to be transferred by Poseidon to Fast Test at Closing are defined by the APA. If Poseidon delivered assets through the closing documents (e.g. Bill of Sale or Affidavit of Assignment of Fictitious Name, Telephone Number, Website, Domain and Advertising) that are outside the scope of the requirements of the APA, such delivery was gratuitous and not pursuant to a contractual obligation. *Parrish v. Gen. Motors Corp.*, 137 So.2d 255, 258 (Fla. 2nd DCA 1962) ("A bonus, under the plan described herein, partakes of gratuity while lacking essential elements of contractual obligation.").[1]

6.     **Fourth**, even if this Court were to find that the APA clearly and unambiguously required Poseidon to transfer "advertising" to Fast Test, the term "advertising" is not defined in the APA and is ambiguous because it does not specify whether it includes a Google Ads Account, the Google Ad Campaigns within a Google Ads Account, the machine learning within a Google Ads

---

[1] As noted below, the APA does not require the sale of "all" assets.

2

Account, the data within a Google Ads Account, or some combination of two or more of the above.[2]

7. **Fifth**, Poseidon could not transfer the HRMGT Google Ads Account to Fast Test under the APA, because the HRMGT Google Ads Account is owned by HRMGT. *Bowers v. Dr. P. Phillips Co.*, 129 So. 850, 855 (1930) ("one cannot sell that which he does not own."); *Encore Enterprises, Inc. v. Roberts Hotels Fort Myers, LLC*, 2011 WL 13175532, *4 (M.D. Fla.) ("It is axiomatic that an entity cannot sell property it does not own.).

8. **Sixth**, to the extent that Plaintiffs attempt to argue that the HRMGT Google Ads Account either is or should have been an asset of Poseidon under the APA, (a) such an argument is barred by the parol evidence rule and the merger/integration clause set forth in ¶44 of the APA; and (b) even if not barred by the parol evidence rule and ¶44 of the APA, that would either be (i) a further ambiguity to be resolved by the jury; or (ii) a question regarding whether a breach of the APA occurred, which is also a question to be resolved by the jury.

9. Curiously, the way that Plaintiffs' Memorandum is written, one would be led (incorrectly) to believe that there is only one Google Ads Account at issue in this litigation, as Plaintiffs repeatedly referred to "the" Google Ads Account, when there are two Google Ads Accounts at issue; to wit, HRMGT Google Ads Account and Poseidon Google Ads Account.

---

[2] This ambiguity must be resolved by the jury. *Fabrica Italiana Lavorazione Materie Organiche, S.A.S. v. Kaiser Aluminum & Chemical Corp.*, 684 F.2d 776, 780 (11th Cir. 1982). Plaintiffs' allegation on page 6 of their Memorandum that any ambiguity should be construed against Poseidon because its business broker draft the APA is misplaced for three reasons. **One**, that is an issue outside of the four corners of the APA. **Two**, that is a factual assertion that is subject to dispute, as the business broker at issue was a "transaction broker", and therefore served as the agent to both sides of the transaction. **Three**, this does not change the well-settled law that the jury must resolve ambiguities, and at best, Plaintiffs would be entitled to a jury instruction on the resolution of the ambiguity based upon the identity of the drafter of the APA.

10.     Finally, contrary to Plaintiffs' mischaracterization in its Memorandum, the APA does not state that Poseidon agreed to sell <u>all</u> of its assets. Rather, in ¶12 of the APA, which contains the defined term of "Assets", Poseidon agreed to sell the "furniture, fixtures and equipment" listed on Schedule A attached to the APA. However, (a) a Google Ads Account is obviously not "furniture, fixtures and equipment"; and (b) even if a Google Ads Account was "furniture, fixtures and equipment"[3], there was no Schedule A attached to the APA.[4] **[ECF 30-1].**

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via CM/ECF to RYAN M. CLANCY, ESQ., Ainsworth + Clancy, PLLC, 801 Brickell Ave., 8th Fl., Miami, FL 33131, this 20th day of April, 2023.

>KATZMAN, WASSERMAN,
>BENNARDINI & RUBINSTEIN, P.A.
>7900 Glades Road, Suite 140
>Boca Raton, Florida 33434
>Tel.: (561) 477-7774
>Fax: (561) 477-7447
>
>By:    /s/ Craig A. Rubinstein
>          CRAIG A. RUBINSTEIN
>          Fla. Bar No.: 77755
>          car@kwblaw.com
>          mrm@kwblaw.com

---

[3] While the words "furniture, fixtures and equipment" in ¶12 of the APA are followed by the words "whether tangible or intangible", there is no such thing as "intangible" furniture, fixtures, or equipment. As Plaintiffs noted on pages 2-3 of their Memorandum, "'Words in a contract are presumed to have been used with their ordinary and customary meaning.'" (citation omitted). The words/phrase "furniture, fixtures, or equipment", which is otherwise known as "FF&E", has an ordinary and customary meaning in business transactions.

[4] Contrary to Plaintiffs' argument on page 6 of their Memorandum, the issue is not what assets were specifically <u>excluded</u> from the APA, but rather what assets were specifically <u>included</u> in the APA. To the extent that these two provisions, when taken together, are ambiguous, that ambiguity must be resolved by the jury.