**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Miami Division

Case No.: 1:23cv20421

FAST TEST NOW HOLDINGS LLC, a
Florida limited liability company, and
JOSHUA WILSON, an individual,

     *Plaintiffs,*

v.

POSEIDON DIAGNOSTICS CORP, a
Florida corporation, and HUASCAR
RIJSSENBEEK, an individual, and HRMGT
Corp., a Florida corporation,

     *Defendants.*

_____/

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**
**THE SECOND AMENDED COMPLAINT**

COMES NOW, Plaintiffs, FAST TEST NOW HOLDINGS LLC ("FAST NOW") and

JOSHUA WILSON ("Mr. Wilson") (collectively referred to as "Plaintiffs"), by and through

undersigned counsels, and files its opposition to Defendant POSEIDON DIAGNOSTICS

CORP's ("POSEIDON") Defendant HUASCAR RIJSSENBEEK's ("Mr. Rijssenbeek") and

Defendant HRMGT CORP's ("HRMGT") (collectively referred to as "Defendants") Motion to

Dismiss Plaintiff's Second Amended Complaint and Memorandum of Law [D.E. 46] (the

"Motion to Dismiss"), and in support thereof states as follows:

**INTRODUCTION**

1. On March 28, 2023, Plaintiffs filed their nine-count Verified Second Complaint
   (hereinafter, "Second Amended Complaint") [D.E. 30].

2. On April 11, 2023, Defendants filed the Motion to Dismiss.

3.  Defendants claim that during the March 22, 2023, status conference which addressed Defendants' Motion to Dismiss the Amended Complaint, the Court ruled that there were "substantial problems" with the Amended Complaint and afforded Plaintiffs the opportunity to address those "substantial problems."

4.  In fact, the Court stated that because Plaintiffs had conceded to certain issues in their Amended Complaint and stated they would fix those issues, it would be granting Defendants' first motion to compel and granting Plaintiffs leave to amend their Amended Complaint, however the Court did not go into the full merits of Defendants' first motion to dismiss.

5.  The Court, however, did make certain suggestions as to how it would rule on certain issues that were brought up in Defendants' motion to dismiss the amended complaint.

6.  Despite these suggestions from the Court, Defendants doubled down and brough the same arguments again in this Motion to Dismiss (it is important to note that Defendants' filed the Motion to Dismiss after the March 22, 2023 hearing); Plaintiffs will address those in turn below.

7.  For the reasons stated herein, this Court ought to deny the Motion to Dismiss.

8.  The Second Amended Complaint's allegations, when assumed to be true, and all moving inferences are granted in favor of the non-moving party, are sufficient to establish a plausible claim for relief in the suit, pursuant to the *Iqbal* and *Twombly* standards.

## GENERAL LEGAL STANDARDS FOR MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) AND FED. R. CIV. P. 12(f)(2)

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the "liberal pleading standards set forth by

Rule 8(a)(2*)." Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Generally, to survive a [Rule 12(b)(6)] motion to dismiss and meet the requirement of Fed. R. Civ. P. 8(a)(2), a complaint need not contain 'detailed factual allegations,' but rather 'only enough facts to state a claim to relief that is plausible on its face.'" *Maledy v. City of Enterprise*, 2012 U.S. Dist. LEXIS 40402, 2012 WL 1028176, (M.D. Ala. March 2012) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (*quoting Twombly*, 550 U.S. at 555). "Thus, the pleading standard set forth in Federal Rule of Civil Procedure 8 evaluates the plausibility of the facts alleged, and the notice stemming from a complaint's allegations." *Keene v. Prine*, 477 Fed. Appx. 575, 583 (11th Cir. 2012). "Where those two requirements are met . . . the form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim." *Id.*

When ruling on a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), a court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences drawn from the complaint. E.g., *Jackson v. Okaloosa County*, 21 F.3d 1531, 1534 (11th Cir. 1994); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) (*abrogated on other grounds*). The Court must limit its consideration to this pleading and the written instruments attached to it as exhibits. *Fed. R. Civ. P. 12(d); GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993), *Nat'l Numismatic*

*Certification, LLC v. eBay, Inc.*, No. 6:08-cv-42-Orl-19GJK, 2008 U.S. Dist. LEXIS 109793, at *21-22 (M.D. Fla. July 8, 2008).

<u>**LEGAL ARGUMENT AND MEMORANDUM OF LAW**</u>

**1. Plaintiffs are voluntarily dismissing Count I for Injunctive relief without prejudice.**

Plaintiffs are voluntarily dismissing Count I for Injunctive relief without prejudice and as such do not address Defendants' motion to dismiss Count I. Plaintiffs' dismissal of Count I is based on Defendants' stipulation as to *Sea Pines of Virginia, Inc. v. PLD, Ltd.*, 399 F. Supp. 708 (M.D. Fla. 1975), being good law and Defendants agreeing that the Court has equitable authority to undue an acceleration of the Promissory Note if Plaintiffs were to prevail. *See* D.E. 58 at 9:9-18.

**2. Count II for Rescission Based on Fraudulent Inducement is properly pled and Defendants' Motion to Dismiss Count II of the Second Amended Complaint should be denied.**

**a. A Guarantor does have standing to seek Rescission of his Personal Guaranty**

On the hearing held by this Court on March 22, 2023, this Court stated "my inclination is that with regard to rescission, that [Mr.] Wilson does have standing. . . ." because Mr. Wilson is a party to the Promissory Note as a Guarantor and if the entire deal is rescinded then, so is the Promissory Note. *See* D.E. 58 at 17:1-11, 17:17-18. Despite this Court's prior statement on this issue, Defendants are again seeking to dismiss Mr. Wilson from the rescission claims. Defendants' main argument as to why a guarantor does not have standing to seek rescission is based on a Northern District of Illinois case which is construing Illinois law. *See United Airlines*, *Inc. v. ALG, Inc.*, 916 F. Supp. 793, 795 (N.D. Ill. 1996). Defendants claim that Mr. Wilson cannot bring forth any claims for rescission or breach of the Asset Purchase Agreement as those claims belong to FAST NOW not Mr. Wilson. Mr. Wilson, however, is not bringing forth a claim for rescission of

the Asset Purchase Agreement, rather a claim for rescission of the personal guarantee to the Promissory Note that he signed. Count II of the Second Amended Complaint, states that Plaintiffs were fraudulently induced by Defendants into closing on the Asset Purchase Agreement and making the Promissory Note. *See e.g.*, D.E. 30 at ¶¶ 28, 35, 82, 124. Count II properly pleads all elements of rescission and therefore Mr. Wilson has properly pled rescission of the personal guarantee to the Promissory Note.

> **b. Count II for Rescission based on Fraudulent Inducement pleads Fraud with particularity.**

Defendants argue that Count II for Rescission based on Fraudulent Inducement improperly lumps all Defendants together and therefore the count fails to comply with the requirements set for in *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F. 3d 1364 (11th Cir. 1997). However, cases like *Brooks* and others which find that complaints involving multiple defendants must inform each defendant of the specific fraudulent acts that constitute the basis of the against the particular defendant, are all cases involving multiple defendants that are not related to one another and therefore require specific notice of their purported fraudulent action. It is not the case that anytime a plaintiff "lumps" together defendants on a fraud based claim that the claim must be dismissed. *See BluestarExpo, Inc. v. Enis*, 568 F. Supp. 3d 1332 (S.D. Fla. 2021) (Dismissing the defendants' argument that the "fraud-based claims must be dismissed because they 'lump[ ] together all six Defendants, in varying capacities,' making it 'impossible for each of the Defendants to know what they, individually, are alleged to have misrepresented' or 'their unique role in the purported fraud.'" Finding that the plaintiff had "supplied enough specificity to enable each Defendant to appreciate at least some aspect of their alleged roles in the various fraud claims. . .").

In this case, Plaintiffs have alleged that Mr. Rijssenbeek is the shole shareholder and

director of both POSEIDON and HRMGT. *See* D.E. 30 at ¶¶ 13, 16. Plaintiffs have also alleged that HRMGT placed all of its assets into POSEIDON. *See* D.E. 30 at ¶¶ 17, 25. Plaintiffs allege that all Defendants produced documents to Plaintiffs during the due diligence period of the Asset Purchase Agreement and that Defendants failed to disclose material information regarding these documents. *See* D.E. 30 at ¶¶ 81, 82. It is clear that from the Second Amended Complaint that during this transaction, there was only one person in charge from the seller's side and that was Mr. Rijssenbeek. Every document produced to Plaintiffs were documents that Mr. Rijssenbeek produced on behalf of POSEIDON. Given that many of the documents were actually documents of HRMGT, HRMGT was also involved in the production of the due diligence documents by nature of Mr. Rijssenbeek taking documents from HRMGT and producing those on behalf of POSEIDON. Plaintiffs allege that Defendants were each involved in the fraudulent inducement because each Defendant had a part in the production of documents to Plaintiffs and each Defendant failed to disclose material information regarding the documents. Given the small universe of documents involved in this case and the fact that Mr. Rijssenbeek was the only person acting on behalf of each Defendant, Defendants are well aware of their alleged fraudulent act and their argument that Count II improperly "lumps" together all Defendants should have no merit.

What Defendants are essentially seeking the Plaintiffs to do is take each paragraph in the Second Amended Complaint that states "Defendants" and instead state "Mr. Huascar on behalf of POSEIDON, HRMGT, and himself." That exercise would not benefit Defendants in any way since, as explained above Defendants took all actions together by nature of Defendants' relationship with one another.

Next Defendants argue that:

there are no factual allegations as to   (a) the specific date(s) on which the reports/data were provided; (b) how the reports/data were provided; (c) to whom

> the reports/data were provided; (d) where the reports/data were provided; (e) the contents of the reports/data; (f) to what specific Google Ads Account(s) the reports/data related; or (g) what statements, if any, were made by any of the Defendants regarding the significance of the reports/data, the specific date(s) on which those statements were made, how the statements were made, where the statements were made, and to whom they were made.

Plaintiffs will address each of these points in turn. First, while Plaintiffs may not allege a singular calendar date on which the reports/data were provided, Plaintiffs do state that such reports were provided to Plaintiffs during the due diligence period of the Asset Purchase Agreement which was from November to December 2022. *See* D.E. 30 at ¶ 81. Second, although Plaintiffs do not state in Count II how the reports/data were provided, Plaintiffs explain that the reports/data were provided via email elsewhere in the complaint. Moreover, Defendants are well aware of when and how the due diligence documents were provided (through POSEIDON's broker) as it is a small universe of documents and it all took place during the negotiation, due diligence and closing period of the Asset Purchase Agreement. Third, Plaintiffs clearly allege that the reports/data were provided to the Plaintiffs. Fourth, paragraphs 22 through 27 of the Second Amended Complaint, which are incorporated into Count II, state the contents of the reports/data. Fifth, paragraph 26 of the Second Amended Complaint, which is incorporated into Count II, states that the reports/date derived from a Google Ads Account linked or belonging to the email: Fasttestnow@gmail.com. Sixth, the Second Amended Complaint makes it clear that Defendants provided these documents during the due diligence period of the Asset Purchase Agreement to show Plaintiffs how the business was performing and to induce Plaintiffs into closing on the Asset Purchase Agreement. *See* D.E. 30 at ¶¶ 22 – 24. Therefore, the Second Amended Complaint properly pleads the "who, what, where, when, and how" of the alleged fraudulent acts of Defendants.

Defendants argue that the three components of paragraph 81(a) of the Second Amended Complaint are written in the disjunctive and therefore the particular basis for the claim is not clear.

The reason paragraphs 81(a) and (b) state "or" is because as alleged in the Second Amended Complaint, Defendants have stated multiple and contradictory reasons for why it did not transfer the Google Ads Account that Plaintiffs are making a claim for. Plaintiffs do not know which of these reasons is the real reason as to why Defendants gave Plaintiffs a different Google Ads Account and so Plaintiffs have pled each possible reason, only Defendants know which of these reasons is the real reason. "Rule 9(b)'s heightened pleading standard may be applied less stringently [. . .] when specific 'factual information [about the fraud] is peculiarly within the defendant's knowledge or control.'" *U.S. ex rel. Heater v. Holy Cross Hosp., Inc.*, 510 F. Supp. 2d 1027, 1033 (S.D. Fla. 2007) (quoting *Hill v. Morehouse Medical Assocs., Inc.*, Case No. 02–14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003)).

Plaintiffs' allegations in paragraph 81(d)-(e) are not contradicted by paragraph 34, because the reason Plaintiffs were satisfied with their ability to obtain an assignment of the leases businesses premises and/or a new lease for the business premises were based on Defendants' false statements to Plaintiffs of such, such as the statement alleged in paragraph 33 of the Second Amended Complaint.

Finally, Defendants argue that Plaintiffs' claim fails because paragraph 82 is pled upon information and belief. However, a complaint for fraud may be plead upon information and belief, when the factual information about the fraud is peculiarly within the defendant's knowledge or control, provided that the legal theory is supported with factual allegations that make the theoretically viable claim plausible. *See Id.* at 1033. Defendants also argue that Plaintiffs state that "Defendants made it seem" a certain state of facts is not sufficient Plaintiffs must plead "what a particular Defendant actually stated, rather than making the conclusory assertion that Defendants 'made it seem' a certain state of facts." However, Plaintiffs are not making a conclusory statement,

the reasonable interpretation of that sentence in the Second Amended Complaint shows that Plaintiffs are simply stating that Defendants provided documents which contained financials and data of other businesses and "made it seem" which means that Defendants presented such financials and data as only that of POSEIDON's in order to induce Plaintiffs. Moreover, Plaintiffs' allegation which is pled upon information and belief, is supported by the reasoning for this belief as well as other allegations of the Second Amended Complaint.

### c. Alleging "Should Have Known" is not reason to dismiss Count II.

 "Under Florida law, to prevail on a common-law fraud-in-the-inducement claim, a plaintiff must demonstrate 1) that a misrepresentation of material fact occurred; 2) that the defendant knew or should have known of the statement's falsity; 3) that the defendant intended the plaintiff to rely on the misrepresentation; and 4) that the plaintiff suffered injury in reliance on the representation." *Democratic Republic of the Congo v. Air Capital Group, LLC*, 12-20607-CIV, 2013 WL 3223688, at *3 (S.D. Fla. June 24, 2013); *see also Premier Gaming Trailers, LLC v. Luna Diversified Enterprises, Inc.*, 304 F. Supp. 3d 1270 (M.D. Fla. 2018); *Prieto v. Smook, Inc.*, 97 So. 3d 916 (Fla. 4th DCA 2012).

There is ample case law to support that Plaintiffs' allegation that Defendants "knew or should have known" of the statements' falsities is sufficient when pleading fraud. As such, Defendants' argument fails and should not be a reason for dismissing Count II of the Second Amended Complaint.

### d. The Second Amended Complaint alleges facts demonstrating that Plaintiffs' reliance was reasonable.

Defendants claim that Plaintiffs have failed to allege any facts establishing that their reliance was reasonable and that the Asset Purchase Agreement demonstrates that the Plaintiffs'

reliance was not reasonable.[1] First, Plaintiffs in fact did establish that their reliance was reasonable. Plaintiffs allege that Defendants provided information and documents to Plaintiffs during the due diligence period of the Asset Purchase Agreement, that such information and documents was purported to be true and that based on review of the information and documents, Plaintiffs were induced to close on the Asset Purchase Agreement. *See* D.E. 30 at ¶¶ 22 – 24, 28. It is not unreasonable to believe that the information and document being produced by a seller during the sale of its assets are correct and accurate and use such information to make the final determination as to whether to close on the deal or not. Defendants' argument is essentially that buyers need to assume that a seller is always producing fraudulent documents and therefore if a buyer only discover the fraud after closing, then the buyer cannot claim he justifiable relied on the information provided by the seller. This was not a case where Plaintiffs and Defendants were in an adversarial

---

[1] Curiously, Mr. Rijssenbeek had prior to arguing this in a Motion to Dismiss testified under oath that the documents were sent to Plaintiffs to induce Plaintiffs make Plaintiffs rely on the documents and that such reliance was reasonable:

Q Do you believe that it was fair and reasonable for my client to rely on those financials? (Over objection)
A: Reasonable.
 Q It was reasonable? Sorry, I need a "yes" or "no". I can't take a nod.
A Yes.

Q And you sent those documents to Mr. Wilson to give him an idea of the value of the business that Poseidon had, didn't you? (Over objection)
A Yeah.

Q Did you send these to Josh or let me make -- be clear here. When I say did you send these to Josh or Mr. Wilson, I understand they went through the broker. Okay? And you understand that the reason you sent them to the broker is so that he could send them to a prospective [purchaser].

Q So when you sent these documents to Mr. Wilson, albeit indirectly, it was not to brag about how much money you were making, was it?
A No.
Q It wasn't to show off to a friend, was it?
A No.
Q You did it because you wanted Mr. Wilson to buy the assets of Poseidon, right?
 A Yes.;
Q We already went over the fact that the reason you provided these to my client was to induce him to spend $1.9 million and buy the business from you. Are you with me so far?
A Correct, but just to make it clear, I'm not the one who set the sales price.;

relationship during the negotiation of the Asset Purchase Agreement and therefore it would be unreasonable to believe the statements of one another.

As such, drawing all reasonable inferences in favor of Plaintiffs, Plaintiffs have established that their reliance was reasonable.

> **e.  An Arms-Length Transaction does not allow a party to misrepresent or omit material facts.**

It is true that:

> In absence of a fiduciary relationship, mere non-disclosure of material facts in an arm's length transaction is ordinarily not actionable misrepresentation unless some artifice or trick has been employed to prevent the representee from making further independent inquiry, though non-disclosure of material facts may be fraudulent where the other party does not have an equal opportunity to become appraised of the facts.

*Continent Aircraft Tr., 1087 v. Diamond Aircraft Indus., Inc.*, 11-61663-CIV, 2013 WL 2285539, at *6 (S.D. Fla. May 23, 2013); *See also Watkins v. NCNB National Bank of Florida, N.A.*, 622 So.2d 1063 (Fla. 3rd DCA 1993). However, there is an exception to this rule which is that "even though a party to a transaction owes no duty to disclose facts within his knowledge, or to answer inquiries respecting such facts, if he undertakes to do so he must disclose the whole truth." Continent Aircraft Tr. 2013 WL 2285539 at * 7 (quoting *Ramel v. Chasebrook Constr. Co.*, 135 So.2d 867, 822 (Fla. 2d DCA 1961); *See also Friedman v. Am. Guardian Warranty Services, Inc.*, 837 So. 2d 1165, 1166 (Fla. 4th DCA 2003) (Where a party in an arm's length transaction undertakes to disclose information, all material facts must be disclosed").

In this case, during the due diligence period of the Asset Purchase Agreement, Defendants provided Plaintiffs with diligence documents regarding the assets that FAST NOW were purchasing. As such, Defendants undertook to disclose facts and to answer inquiries respecting such facts and therefore Defendants had to disclose the whole truth/ all material facts.

Moreover, Defendants further argue that Plaintiffs do not allege that they could not have discovered the information by their own diligence nor do Plaintiffs allege that Defendants "employed an artifice or trick to prevent an independent investigation by Plaintiffs." Defendants also argue that the Asset Purchase Agreement was contingent on FAST NOW's satisfaction of Seller's financial representations and therefore there can be no fraud as a matter of law. However, it is "unnecessary, in alleging fraud in the inducement, for the plaintiff to plead that he was 'precluded' from discovering the truth as to the misrepresented facts, so long as the complaint alleges reasonable reliance on material misrepresentations of existing fact" as such, Defendants' arguments are not supported by law. *See Avila S. Condo. Ass'n, Inc. v. Kappa Corp.*, 347 So. 2d 599, 604 (Fla. 1977).

Therefore, it matters not that Plaintiffs had access to all the due diligence documents, once Defendants gave Plaintiffs that information, they had a duty to disclose the whole truth, instead as Plaintiffs have alleged, Defendants made false representations.

### f.   The Claim of Fraud is not barred by the Existence and the Terms of the Asset Purchase Contract.

Defendants try to make an argument based on the independent tort doctrine. However, Plaintiffs' fraudulent inducement claim is separate and apart from its breach of contract claim. Plaintiffs are claiming that Defendants fraudulently induced Plaintiffs into closing on the Asset Purchase Agreement by making false misrepresentations and omissions of material facts regarding the Google Ads Account and other due diligence documents produced. Plaintiffs' Breach of Contract claim is based on the fact that Defendants did not transfer the correct Google Ads Account as it was obligated to do under the Asset Purchase Agreement. As such, the independent tort doctrine does not apply to these claims.

Moreover, although not explicitly stated, Defendants seem to try to make what seems to be

an integration or merger of agreements argument as a reason why the claim for fraudulent inducement claim should be barred. This argument is not appropriate in this case, Plaintiffs are not claiming that Defendants made a promise that was not later included in the Asset Purchase Agreement, instead Plaintiffs are arguing that after signing the Asset Purchase Agreement, Defendants made material misrepresentations and/or omissions to induce Plaintiffs into closing on the Asset Purchase Agreement.

For the reasons stated above, Count II of the Second Amended Complaint is not barred by the independent tort doctrine.

### g.   Plaintiffs allege that the Status Quo Can be Restored.

Despite the fact that this Court already addressed this argument and found that Defendants' arguments regarding the restoration of status quo was not appropriate on a motion to dismiss stage, Defendants again make the same argument and as such Plaintiffs and this Court must address the argument again. *See* D.E. 58 at 33:22 – 34:16.

A plaintiff is entitled to rescission of a contract where: (1) the plaintiff explains the character or relationship of the parties; (2) the plaintiff enters into a valid contract with the defendant, (3) there is the existence of fraud, mutual mistake, false misrepresentation, impossibility of performance, or other grounds for rescission or cancellation; (4) the party seeking rescission has rescinded the contract and notified the other party of such rescission; (5) if the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, ***if restoration is possible***; (6) Lastly, that the moving party has no adequate remedy at law. *Billian v. Mobil Corp.*, 710 So. 2d 984, 991 (Fla. 4th DCA 1998) (emphasis added). Plaintiffs' Second Amended Complaint alleges each of these elements.

Paragraph B(7) of the Motion to Dismiss states that Count II of the Amended Complaint

should be dismissed because it "does not contain any allegations that the parties could be restored to their status quo positions, nor does it explain how such an objective could be achieved." However, Plaintiffs do in fact allege that Plaintiffs have offered to and/or will restore any benefit that Plaintiffs received from Defendants if restoration is possible. *See* D.E. at ¶ 89. Defendants seem to be fixating on the inclusion of the statement "if restoration is possible" in Plaintiffs claim. However, there is ample case law to support that this is the correct element when pleading rescission. *See e.g., Bland v. Freightliner LLC*, 206 F. Supp. 2d 1202 (M.D. Fla. 2002). That is because a court still has the power to grant rescission even where restoration to the status quo is impossible, provided the equities between the parties can be balanced. *See Braman Dodge, Inc. v. Smith*, 515 So. 2d 1053, 1054 (Fla. 3d DCA 1987). At the motion to dismiss stage, where all allegations are to be taken as true, Plaintiffs' allegation that they will restore all benefits to Defendants is sufficient to establish this element and Plaintiff is not required to explain how such an objective could be achieved.

Further, Defendants argue that pursuant to the Asset Purchas Agreement, POSEIDON has been bound by a three-year, 150-mile radius restrictive covenant and that it would be impossible to go back in time and permit POSEIDON to retroactively compete against FAST NOW. This argument is a red hearing. Once the Asset Purchase Agreements and all other agreements are rescinded, Defendants will have all their assets back and the non-compete will no longer be in place. Defendants will get back the assets and the business that was operating throughout the time Defendants were not allowed to compete against Plaintiffs.

Defendants argue that Plaintiffs fail to allege that the landlord would accept a transfer of the leases back to POSEIDON. However, this argument fails given that Plaintiffs have allege that they will restore any benefits they received back to the Defendants if restoration is possible. *See*

D.E. 30 at ¶ 89. This is a sufficient pleading to survive a motion to dismiss because it must be taken as true. Plaintiffs are not required to prove their case at the pleading stages.

### h.  Conclusion

For the reasons stated above, Defendants' Motion to Dismiss Count II of the Second Amended Complaint should be denied.

**3.  Count III for Rescission Based on Mutual Mistake is properly pled and Defendants' Motion to Dismiss Count III of the Second Amended Complaint should be denied.**

### a.   A Guarantor does have standing to seek Rescission of his Personal Guaranty

As set forth in Section 2(a) above regarding Count II for rescission, which is incorporated by reference herein, Mr. Wilson does have standing to seek rescission of his personal guaranty.

### b.  Plaintiffs allege that the Status Quo Can be Restored.

As set forth in Section 2(g) above regarding Count II for rescission, which is incorporated by reference herein, Plaintiffs have sufficiently alleged that the status quo between the parties can be restored, if possible. *See* D.E. 30 at ¶ 100. Moreover, Count III is for rescission based mutual mistake and "an agreement can be rescinded based upon mutual mistake even if the pre-agreement status quo cannot be restored as long as the equities between the parties can be balanced." *Bass v. Farish*, 616 So. 2d 1146, 1147 (Fla. 4th DCA 1993).

### c.  Conclusion

For the reasons stated above, Defendants' Motion to Dismiss Count III of the Second Amended Complaint should be denied.

**4.  Count IV for Breach of Contract is properly pled and Defendants' Motion to Dismiss Count IV of the Second Amended Complaint should be denied.**

### a.  Although Mr. Wilson assigned his rights under the Asset Purchase Agreement, Count IV seeks rescission as a relief which would rescind Mr. Wilson's Personal Guaranty.

While Count IV does not seek rescission of the agreements, it does state that Plaintiffs have suffered damages due to Defendants' refusal to fulfill their obligations under the Asset Purchase Agreement. Mr. Wilson's damage being that he personally guaranteed the Promissory Note based on the understanding that Defendants would comply with their obligations under the Asset Purchase Agreement.

Moreover, Mr. Wilson is a named party to the Breach of Contract claim to not waive any right to rescission of his personal guaranty if the Asset Purchase Agreement and all other agreements are rescinded due to a breach of the Asset Purchase Agreement. To the extent that if rescission is obtained through Count IV and Mr. Wilson's personal guaranty can be rescinded even if he is not a party to this claim, Plaintiffs will agree to dismiss him from this claim. However, if the contrary is true, Plaintiffs feel he is a necessary party to this claim.

**b. The Google Ads Account is covered by the Asset Purchase Agreement**

Despite Defendants' allegations that they "did not have any obligation" to transfer any Google Ads Account – they *did* transfer an Account, so that argument is disingenuous at best, waived at worst, and not a proper argument to be made at the motion to dismiss stage.

Defendants state that because the words "Google Ads Account" and "Google" do not appear anywhere in the Asset Purchase Agreement, it was not an intended asset. This argument has no merit as the Asser Purchase Agreement does not fully name every asset that is being sold. The Asset Purchase simply defines assets as "all furniture, fixtures and equipment, whether tangible or intangible." Defendants argue that a Google Ads Account is neither a furniture, fixture nor equipment. However, these terms must be given their ordinary and customary meaning. *See Am. Color Graphics, Inc. v. Eckerd Corp.*, 2008 U.S. Dist. LEXIS 56588, 15-16 (M.D. Fla. July 25, 2008). Oxford Leaners Dictionary defines the term "equipment" as "the things that are needed

for a particular purpose or activity." *Equipment*, Oxfordlearnersdictionaries.com. 2023. https://www.oxfordlearnersdictionaries.com/us/definition/english/equipment#:~:text=equipment %20the%20things%20that%20are,a%20piece%20of%20equipment (19 April 2023). The words that proceed "tangible and intangible" modify the word equipment. Oxford Leaners Dictionary defines the term "intangible" as "something that does not exist as a physical thing but is still valuable to a company." *Intangible*, Oxfordlearnersdictionaries.com. 2023. https://www.oxfordlearnersdictionaries.com/us/definition/english/intangible_1?q=intangible.

Moreover, the Bill of Sale which is incorporated by reference in the Asset Purchase Agreement and attached to the Second Amended Complaint, further expands the definition of assets by including "goodwill, inventory, customer records, materials, supplies, transferable licenses, business name(s), telephone number(s), lease, leasehold interest and improvements, <u>contract rights, software and software licenses, trade secrets, patents, intellectual property, web</u> <u>sites and domain names, email addresses, and all other assets of the business.</u>" <u>To the extent the</u> <u>Court disagrees with every "asset group" listed above surely a Google Ads Account owned by a</u> <u>business qualifies under the catch all – "and all other assets of the business.</u>"

Further, the Affidavit of Assignment of Fictitious Name, Telephone Number, Website, Domain and Advertising was signed after the Asset Purchase Agreement and it states "[POSEIDON, under oath, hereby assigned to [FAST NOW] all of the right title and interest… and any and all advertising." The language of the Bill of Sale, the Affidavit of Assignment of Fictitious Name, Telephone Number, Website, Domain and Advertising, and the Asset Purchase Agreement, when construed in favor of Plaintiffs and when all reasonable inferences that can be drawn are drawn in favor of Plaintiffs, shows that the Google Ads Account/advertising to be part of the assets being sold.

Defendants also argue that ¶25 of the Asset Purchase is a disjunctive sentence and therefore it is unambiguous that if Poseidon transferred the items that preceded the disjunctive term (i.e. telephone numbers, yellow pages, website, and e-mail address), then it did not have an obligation to transfer the items that followed the disjunctive term (i.e. Google Ads Accounts or the contents thereof). The Court has already stated that it is not persuaded by this argument and so Plaintiffs will not address it in this response.

As such, the exhibits to the Second Amended Complaint do not contradict Plaintiffs' Second Amended Complaint. Given that Plaintiffs' allegation that a Google Ads Account was an Asset under the Asset Purchase Agreement must be taken as true, and that the Court must accept all reasonable inferences drawn from the Second Amended Complaint, Plaintiffs have properly pled that a Google Ads Account was an asset to be sold under the Asset Purchase Agreement.

**c. The Amended Complaint does allege facts that would constitute a breach of paragraph 28 of the Asset Purchase Agreement.**

Pursuant to Paragraph 28 of the Asset Purchase Agreement,

> "Until possession is transferred to the Buyer at Closing, Seller agrees to maintain the Business premises, including heating, cooling, plumbing and electrical systems, built-in fixtures, together with all other equipment and assets included in this sale, in good working order, and to maintain and leave the premises in a clean, orderly condition."

In Paragraph 28 of the Amended Complaint, Plaintiffs alleged that "Defendants closed the clinic space in the North Miami Beach premises and moved all equipment into the lab space." Accepting these allegations as true, Plaintiffs demonstrate a breach of Paragraph 28 of the Asset Purchase Agreement because it would mean that Defendants failed to keep and maintain one of the business premises given that it got completely rid of one of the business premises all together.

**d. Plaintiffs allege that the Status Quo Can be Restored.**

As set forth in Section 2(g) above regarding Count II for rescission, which is incorporated

by reference herein, Plaintiffs have sufficiently alleged that the status quo between the parties can be restored, if possible.

### e.   Conclusion

For the reasons stated above, Defendants' Motion to Dismiss Count IV of the Second Amended Complaint should be denied.

**5.   Count V for Fraudulent Inducement is properly pled and Defendants' Motion to Dismiss Count V of the Second Amended Complaint should be denied.**

As set forth in Section 2(a)-(h) regarding Count II for rescission based on fraudulent inducement, which is incorporated herein, Plaintiffs have sufficiently pled their claim for Fraudulent Inducement. Moreover, Mr. Wilson has standing to bring a claim for fraudulent inducement for the same reasons addressed in Section 4(a) above, including that Mr. Wilson was induced into signing the personal guaranty based on the fraudulent misrepresentations made by Defendants. A such, Defendants' Motion to Dismiss Count V of the Second Amended Complaint should be denied.

**6.   Count VI for Negligent Misrepresentation is properly pled and Defendants' Motion to Dismiss Count VI of the Second Amended Complaint should be denied.**

As set forth in Section 2(a)-(h) regarding Count II for rescission based on fraudulent inducement, which is incorporated herein, Plaintiffs have sufficiently pled their claim for Fraudulent Inducement. Moreover, Mr. Wilson has standing to bring a claim for fraudulent inducement for the same reasons addressed in Section 4(a) above, including that Mr. Wilson was induced into signing the personal guaranty based on the fraudulent misrepresentations made by Defendants. A such, Defendants' Motion to Dismiss Count V of the Second Amended Complaint should be denied.

**7. Count VII for Breach of Implied Duty of Good Faith and Fair Dealing is properly pled and Defendants' Motion to Dismiss Count VII of the Second Amended Complaint should be denied.**

For starters, Mr. Wilson is not a party to this claim and thus does not need to be dismissed from this claim. As set forth in Section 4(b)-(e) regarding Count IV for Breach of Contract, which is incorporated herein, FAST NOW has sufficiently pled its claim for Breach of Implied Duty of Good Faith and Fair Dealing. Moreover, FAST NOW pled that Defendants breached the duty of good faith and fair dealing by agreeing to sell the Google Ads Account and/or Campaign and then allegedly deleting the Google Ad Campaign in an effort to avoid having to transfer over the full Google Ads Account. *See* D.E. 30 at ¶ 140. This is different and separate from the conduct which is the reason for the Breach of Contract claim, i.e., not transferring the correct Google Ads Account. Taking those allegations as true, the Court must deny Defendants motion to dismiss Count VII of the Complaint.

**8. Count VIII for Specific Performance is properly pled and Defendants' Motion to Dismiss Count VIII of the Second Amended Complaint should be denied.**

For starters, Mr. Wilson is not a party to this claim and thus does not need to be dismissed from this claim. FAST NOW Count VIII for Specific Performance is pled in the alternative to the other counts. Moreover, FAST NOW pled that there is no adequate remedy at law, and they also pled that FAST NOW purchased the Google Ads Account. *See* D.E. 30 at ¶ 149. As explained above in Section 4(b), that statement is not contradicted by the exhibits of the Second Amended Complaint. Therefore, for the purposes of a Motion to Dismiss, Plaintiffs have sufficiently pled their count for specific performance. As such, Defendants' Motion to Dismiss Count IX of the Second Amended Complaint should be denied.

**9. Count IX for Declaratory Judgment is properly pled and Defendants' Motion to Dismiss Count IX of the Second Amended Complaint should be denied.**

Plaintiffs agree to remove Mr. Wilson has a party to Count IX of the Second Amended Complaint. FAST NOW incorporates by reference and make the same arguments in Sections 4(b) above. Moreover, FAST NOW properly pled all the elements for a declaratory judgment and Defendants do not deny that they do. FAST NOW pleads Declaratory Judgment in the alternative and asks the Court to review the Asset Purchase Agreement and the other agreements and to find that the Google Ads Account was part of the assets being purchased. As such, Defendants' Motion to Dismiss Count IX of the Second Amended Complaint should be denied.

## CONCLUSION

**WHEREFORE**, Plaintiffs, respectfully requests that this Court issue an order denying Defendants, Motion to Dismiss the Second Amended Complaint along with any further relief as this Court deems just and proper.

Dated: April 28, 2023.                    Respectfully Submitted,

**AINSWORTH + CLANCY, PLLC**

By: /s/ Ryan Clancy
Ryan M. Clancy, Esq.
Fla. Bar No. 117650
801 Brickell Ave., 8th floor
Miami, Florida 33131
Email: ryan@business-esq.com
Phone: 305-600-3816
Fax: 305-600-3817

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed on April 28, 2023, and served on all parties of record via the EF/CMR system.

By: /s/ Ryan Clancy
Ryan Clancy, Esq.

**Service List:**

KATZMAN, WASSERMAN,
BENNARDINI & RUBINSTEIN, P.A.
Craig A. Rubinstein, Esq.
Florida Bar No. 77755
7900 Glades Road, Suite 140
Boca Raton, Florida 33434
Telephone: 561-477-7774